1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  Annick M. Persinger (State Bar No. 272996)
   Julia A. Luster (State Bar No. 295031)
3  1990 North California Blvd., Suite 940
   Walnut Creek, CA 94596
4  Telephone: (925) 300-4455
   Facsimile: (925) 407-2700
5  E-Mail:  ltfisher@bursor.com
                apersinger@bursor.com
6                jluster@bursor.com
7
8  *Counsel for Plaintiff*
   *(additional counsel appears on signature page)*
9

10             **UNITED STATES DISTRICT COURT**

11           **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  WANNITA THESIER-HENDRICKS, on Behalf of Herself and all Others Similarly Situated, | Case No. 2:15-CV-00477 |
| 15                              Plaintiff, | **CLASS ACTION COMPLAINT** |
| 16          v. | **JURY TRIAL DEMANDED** |
| 18  TJL ENTERPRISES, INC. and JACQUELINE COURTIOL-LAWRENCE, | |
| 20                    Defendants. | |

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff Wannita Thesier-Hendricks ("Plaintiff"), by her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.     This is a class action against TJL Enterprises, Inc. ("TJL" or "the Company") and the Company's President Jacqueline Courtiol-Lawrence ("Lawrence," collectively with TJL, "Defendants") for falsely representing that the over-the-counter ("OTC") homeopathic remedies Tummy Calm, Colic Calm Plus and Colic Calm (the "Homeopathic Gas Relief Products" or the "Products"), provide infants with symptomatic relief of gas, bloating, upset stomach and hiccups.

2.     Defendants falsely represent and/or suggested on the Products' labels and/or in their nationwide advertising campaign that the Products are fast acting, safe and effective, FDA approved for safety and efficacy, all natural, and work synergistically with the Products' other ingredients.

3.     Each of the Products contains a combination of nine to twelve ingredients in infinitesimal doses which Defendants describe as "microdoses" (e.g., "[t]he active ingredients are diluted to micro-doses, making Colic Calm safe, gentle and ideal for self-treatment.")  Defendants further maintain that "the synergistic remedies in Colic Calm provide multi-symptom relief" and attribute each ingredient to the treatment of one of more symptoms.

4.     Despite Defendants' false and misleading representations concerning their efficacy, the Products are ineffective.  The microdoses are so small that they cannot possibly have any pharmacological or synergistic effect.  Indeed, eleven of the twelve ingredients in Colic Calm Plus and eight of the nine ingredients in Tummy Calm are diluted to one part per trillion (1/1,000,000,000,000) of their

original strength, while eight of the nine ingredients in Colic Calm are diluted to one part per one hundred thousand (1/100,000).

5.    Moreover, Defendants mislead consumers into believing that the FDA has approved the Products.  In fact, the FDA has not reviewed the Products for safety or efficacy, and is not aware of scientific evidence to support the efficacy of any homeopathic products.

6.    Finally, Defendants falsely claim that each of the Products are "ALL NATURAL."  However, each of the Products contain commercially produced xylitol, which is not all natural.

7.    As a direct and proximate result of Defendants' false and misleading advertising claims and marketing practices, Plaintiff and the members of the Class, as defined herein, purchased Defendants' ineffective Products.  Plaintiff and the members of the Class purchased the Products because they were deceived into believing that the Products would provide infants in their charge with safe and effective symptomatic relief of gas, bloating, upset stomach and hiccups.  As a result, Plaintiff and members of the Class purchased the Products that were not effective and have been injured in fact.  Plaintiff and the Class Members have suffered an ascertainable and out-of-pocket loss.  Plaintiff and members of the Class seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

8.    Plaintiff seeks relief in this action individually and on behalf of all purchasers of the Products for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ Code §§ 1750, *et seq*.; the California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq*.; the California False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq*.; for breach of express warranty; and unjust enrichment.

**THE PARTIES**

9.  Plaintiff Wannita Thesier-Hendricks is a citizen of Alabama.

10.  Defendant TJL Enterprises, Inc. is a California corporation with its principal place of business at 5353 E. 2nd Street #208, Long Beach, California. Defendant TJL is engaged in the business of manufacturing, mass marketing, and distributing homeopathic formulas for the treatment of infant and children's gas, bloating, upset stomach and hiccups, including Colic Calm, Colic Calm Plus, and Tummy Calm.

11.  Defendant Jacqueline Lawrence is an individual and citizen of California. She is the creator, and spokesperson for the Homeopathic Gas Relief Products. She is also the President of Defendant TJL and along with her husband Tim Lawrence, a co-founder of the Company.

12.  Defendants produce, market, and sell the Products throughout the United States. Defendants have long maintained substantial distribution and marketing operations in California, and in this District.

**JURISDICTION AND VENUE**

13.  This Court has personal jurisdiction over each of the Defendants. Defendant TJL is incorporated in California and maintains its principal place of business in Long Beach, California. Defendant Lawrence is a domiciliary of California.

14.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

15.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class Member is a citizen of a state different from at least one Defendant.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant TJL's principal place of business is located in this District, Defendant Lawrence resides in this District and the Products that are the subject of the present Complaint are sold extensively in this District.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**A.    The Homeopathic Gas Relief Products**

17.     The Homeopathic Gas Relief Products, Tummy Calm, Colic Calm and Colic Calm Plus are each marketed and sold for symptomatic relief of gas, bloating, upset stomach and hiccups.

18.     Defendants maintain that the Products have been "used safely and successfully by more than a million relieved parents and babies everywhere." *See* www.coliccalm.com (last visited January 8, 2015).

19.     The Products are available in retail stores nationwide including Walgreens, CVS pharmacies, and Babies R' Us.  In addition, the Products are available at major online retailers including Amazon.com, Diapers.com and Walmart.com.

20.     Tummy Calm and Colic Calm are marketed and advertised together both on the Colic Calm Youtube.com channel, on the Colic Calm website and online and in other advertising.



21.     All of the active ingredients in the Products are purported to be homeopathic.  All but one of the active ingredients in the Products are present in concentrations of either one part per trillion (1,000,000,000,000) or one part per one hundred thousand (100,000).  The minute doses of the Products' ingredients cannot possible have any pharmacological effect.

22.    However, the principals of homeopathy which Defendants maintain support their claims of efficacy, provide that a solution which is more heavily diluted and contains less of its active ingredient is actually *more* potent that a solution that contains a larger concentration of the same ingredient.

23.    For example, eight of the "active ingredients" in Colic Calm Plus are in concentrations that are one ten-millionth (10,000,000) of the concentrations in regular Colic Calm.  However, Defendants maintain that Colic Calm Plus is the "professional strength," "enhanced formulation" providing "extra support."  Indeed, with respect to Colic Calm Plus, Defendants maintain that "no other formula can match its amazing healing properties to quickly and safely eliminate the symptoms of infant gas, colic and reflux."

**B.    The Defendants**

24.    Defendants maintain that Colic Calm was created in 2003 by Defendant Lawrence.  She and her husband founded Defendant TJL in that year to market and sell Colic Calm.  She describes Colic Calm as a "miracle in a bottle."

25.    Defendant Lawrence holds an undergraduate degree in French and a M.A. in Secondary Education.  Upon information and belief, she had no formal training in the creation of drug products prior to creating Colic Calm in her kitchen.

26.    As she tells her story in various publications and promotional appearances, Defendant Lawrence was an inner city high school teacher, who left her job to care for her newborn son.  She was unable to return to work because the child was afflicted with severe colic.  The stress of dealing with her child's affliction caused her to suffer from post-traumatic stress disorder.  She tried every known remedy to treat her son's symptoms, but nothing worked.  Defendant Lawrence then began tinkering with homeopathic formulations.  "I was doing my own research, mixing things up in my kitchen in micro doses."   Within two months, Defendant Lawrence was ready to try her concoction out on her infant son.  On the first try, she

1  reported, "it was like a scene from a movie … [H]e drank it and started smiling and

2  never went back to crying."  Thus, Colic Calm was born.

3      27.    While Colic Calm was cooked up in Defendant Lawrence's kitchen in

4  only two months, Defendants maintain that Lawrence created Tummy Calm in 2012

5  following years of research and development.

6      28.    According to the Colic Calm and Tummy Calm websites, Defendant

7  Lawrence "now tours the country, putting allopathic and holistic health care

8  professionals in-the-know about [TJL's] growing family of products."  She also

9  promotes the Products directly to consumers on Defendants' websites, web blog and

10  in the media.

11      29.    For example, Defendant

12  Lawrence's appearance on the PBS

13  Program "Savvy Moms" is promoted

14  on the Colic Calm website and on

15  Defendants' Colic Calm

16  Youtube.com channel.



17      30.    In the video, Defendant

18  Lawrence states that her home

19  brewed prototype "worked pretty

20  much miraculously from the first dose.  She further stated that "homeopathics have

21  special facilities that are **FDA approved** and inspected.  The quality, the purity, **the**

22  **efficacy**, the strength, all of those are covered

23  with homeopathic medicines."

24      31.    Defendants now present this

25  television appearance to consumers as PBS'

26  endorsement of Colic Calm.  Defendants display

27  the PBS logo while discussing groups that



28

CLASS ACTION COMPLAINT                                                    6

purportedly "recognize the safety and effectiveness of Colic Calm."

32.    In promotion of her products, Defendant Lawrence reiterates many of the false and misleading statements on the product packaging, website and other promotional materials that are at issue in this case.  For example, Defendant Lawrence has said that "we have a success rate of over 90% for these age old problems and most of the time, it is irrefutable from the very first dose."  She has further stated that Colic Calm works in minutes to relieve upset stomach, colic and gas in infants and that Tummy Calm "is targeted to quickly relieve gas and bloating for children of all ages."



Source: www.facebook.com/coliccalm ("Colic Calm & Tummy Calm creator Jacqueline Lawrence explains product properties and benefits to a conference attendee.").

33.    As part of her promotional pitch in other media, Defendant Lawrence has also said that Colic Calm and Tummy Calm are all natural and "are FDA regulated homeopathic medicines and they are manufactured under the strictest standards for purity and efficacy. … The antispasmodic properties, I believe, are beyond compare in relaxing the digestive system and relieving upward pressure too.  So if reflux is the problem [they are] a great natural place to start before resorting to pharmaceutical drugs."

## C.    **The Individual Products**

### a.  **Colic Calm**

34.    Defendants' suggested retail price for Colic Calm is $18.95 for a two ounce bottle, and the product can be purchased for approximately that amount in retail stores nationwide.

### i. The Product Label and Packaging

35.     Defendants maintain on the product label that Colic Calm is "the first homeopathic gripe water."  The Colic Calm label further reads: "For symptomatic relief of Gas Colic and Upset Stomach," "Even Helps Hiccups," and that Colic Calm "temporarily relieves the symptoms of gas colic, upset stomach, bloating, and hiccups."

36.     The Colic Calm label further provides that "symptom relief is achieved by stimulation of the body's self-healing properties."  It also promises consumers that the product is "pure and natural," "safe and gentle," and "fast acting."



37.     The Colic Calm label bears a seal which reads "PEDIATRICIAN RECOMMENDED ALL NATURAL."  The same seal appears on the label of both Colic Calm Plus and Tummy Calm.

38.    The Colic Calm label also tells consumers that "millions of children around the world take homeopathic medicines as recommended by their health care practitioners."

39.    The label indicates that Colic Calm contains the following active homeopathic ingredients: Aloe Socotrina (Aloe) 5x, Carbo Vegetabilis (Vegetable Charcoal) 1x, Carum Carvi (Caraway) 5x, Chamomilla (Chamomile) 5x, Foeniculum Vulgare (Fennel) 5x, Melissa Officinalis (Lemon Balm) 5x, Mentha Piperita (Peppermint) 5x, Primus Spinosa (Blackthorn) 5x, and Zingiber Officinale (Ginger) 5x.  As explained below, the term "5x" indicates that each of these ingredients are diluted down to one-one hundred thousandth (1/100,000) of their original strength.

| Active Ingredients | Dilution | Purpose |
| --- | --- | --- |
| Aloe Socotrina | 5x (1/100,000) | Gas Relief, Bloating |
| Carbo Vegetabilis | 1x (1/10) | Gas Relief, Upset Stomach |
| Carum Carvi | 5x (1/100,000) | Digestive Aid |
| Chamomilla | 5x (1/100,000) | Calming and Soothing, Hiccups |
| Foeniculum Vulgare | 5x (1/100,000) | Gas Relief |
| Melissa Officinali | 5x (1/100,000) | Calming and Soothing |
| Mentha Piperita | 5x (1/100,000) | Bloating, Colic |
| Prunus Spinosa | 5x (1/100,000) | Upset Stomach, Colic |
| Zingiber Officinale | 5x (1/100,000) | Digestive Aid |

40.    The label further indicates that Colic Calm contains the following inactive ingredients: Citric acid, Glycerin, Potassium benzoate, Potassium citrate, purified water, Sorbic acid and Xylitol.

41.    The label also provides the proper dosage for Colic Calm: ¼ teaspoon for children under 20 pounds and ½ teaspoon for children over 20 pounds.  "If needed, repeat up to 3 doses every thirty minutes or as directed by a physician.  Do not exceed 6 full doses in 24 hours."

42.    The package insert for Colic Calm reads:

- "FDA-regulated medicine · Safe gentle and effective"

- "[i]nstead of relying on only one active ingredient, the many synergistic ingredients in Colic Calm, work together to provide multi-symptom relief."

- "most babies experience relief within minutes of their first dose of Colic Calm.  … Sometimes it takes a few days before new positive relief associations can be made with Colic Calm.  We recommend giving Colic Calm at least one week to fully work its wonders."

43.    The Colic Calm label including the package insert is accessible from the FDA Online Label Repository located at labels.fda.gov.  The FDA Online Label Repository maintains drug labeling information submitted by manufacturers to the FDA.

44.    Colic Calm is listed on the FDA Online Label Repository under the marketing category "Unapproved Homeopathic."  The FDA Online Label Repository provides that "Drugs marked … "unapproved homeopathic" … on this Web site have not been evaluated by FDA for safety and efficacy and their labeling has not been approved.  In addition, FDA is not aware of scientific evidence to support homeopathy as effective."

45.    The FDA Label Online Repository's database entry for Colic Calm is annexed hereto as Exhibit A (retrieved 10/28/2014).  Accompanying the label on the registry is the following disclaimer:  "Disclaimer: This homeopathic product has not been evaluated by the Food and Drug Administration for safety or efficacy.  FDA is not aware of scientific evidence to support homeopathy as effective."

### ii.  Marketing and Advertising

46.    Defendants maintain a website for the promotion of the Products at www.coliccalm.com.  The website reinforces the false and misleading statements on the Colic Calm product label.

47.    The website provides:

- "FDA Regulated- All natural Homeopathic Medicine Stimulates and Supports Baby's Self-Healing Abilities Fast Acting. No Side Effects & Even Treats Hiccups!" 

- "The only gripe water that is homeopathic and FDA regulated for safety and effectiveness;"

- "Colic Calm uses homeopathic ingredients which the FDA recognizes as medically effective in the treatment of the digestive discomfort associated with infant colic, gas and reflux;"

- "Homeopathic medicines comply with similar regulatory processes for safety and efficacy as regular pharmaceuticals;"

- "There are other gripe waters on the market that are sold as "dietary supplements". Be careful! These are not regulated by the FDA and fall under loose dietary supplement guidelines;"

- "Unlike herbs, dill oil, vitamins and other supplements, homeopathic medicines are regulated in the United States by the FDA as over-the-counter drug products. The individual ingredients have undergone extensive clinical testing to substantiate their safety and effectiveness in order to be listed in the Homeopathic Pharmacopoeia of the United States (HPUS);" 

- "Gas, colic and reflux stand no

chance against the healing properties of Colic Calm Gripe Water;"

- "Colic Calm has a success rate of more than 90% in treating infant gas and colic;"

- "relieves hiccups and soothes stomach upset;"

- "A combination of homeopathic ingredients is used to treat the multiple symptoms of colic as depicted below" (*see* adjacent image);

- "Colic Calm works instantly! It need only be given once symptoms of infant discomfort become evident;"

- "our gentle formula provides the safest and most effective relief of colic and gas pain available anywhere;"

- "the homeopathic remedies in Colic Calm stimulate the body's self-healing properties;" and

- "With homeopathics, there are no side effects at all; even if you take the wrong remedy for the wrong condition, it will cause no harm."

"...nine carefully selected, side-effect-free homeo-pathic remedies..."

"...works instantly!"

"...babies just happen to love the taste!"

"...stimulate the body's self-healing properties."

48.    The Colic Calm website explains in more detail the purported effects of each active ingredient as indicated on the Colic Calm label.  The website notes:

a. **Chamomilla** (Chamomile) Great for easing the colic symptoms of irritability, nervous tension and anxiousness. Chamomile is one of the best and most commonly used remedies for insomnia and restlessness, especially effective when baby is hypersensitive to pain.

b. **Foeniculum Vulgare** (Fennel) Relaxes spasms in smooth muscles, like those in the intestinal tract. Fennel has long been used for indigestion and as a gas-relieving and gastrointestinal tract cramp-relieving agent. It also provides pain-reducing and anti-microbial actions.

c. **Carum Carvi** (Caraway) Has been used effectively for over 5,000 years to relieve flatulence, heartburn and indigestion. Caraway is widely recognized as an antispasmodic for mild spasms of the gastrointestinal tract.

d. **Mentha Piperita** (Peppermint) An excellent digestive aid that is well known for its ability to induce the expulsion of gas from the stomach and intestines. Peppermint also has antispasmodic effects and stimulates bile flow. As early as the Middle Ages, ancient doctors knew what modern science has confirmed – enhancing and rebalancing the body's bile secretions are essential for the treatment of indigestion, including gastric acid reflux.

e. **Zingiber Officinale** (Ginger) An outstanding soothing natural medicine for the gastrointestinal tract. Like peppermint, ginger has been shown to beneficially influence gastric mobility while also exerting antispasmodic effects. It is also a very effective remedy for nausea.

f. **Melissa Officinalis** (Lemon Balm) Known for its relaxing and gas-relieving (carminative) effects. Also shown to be effective in treating insomnia and improving quality of sleep. Lemon balm is frequently combined with peppermint for soothing upset stomach.

g. **Aloe Socotrina** (Aloe) Useful for gas, rumbling in the stomach, and cramping prior to stool. Also helps relieve bloating and pain over the liver region.

h. **Prunus Spinosa** (Blackthorn) Relieves pressure of abdominal flatulence which can cause cramp-like and aching pains in the bladder region. Also relaxes spasmodic colic and restores regularity.

i. **Carbo Vegetabilis** (Vegetable Carbon)  Recognized for its ability to eliminate toxins in the body. Provides relief from gas, indigestion, abdominal distention with cramping pains, and belching.

49.    The Colic Calm website includes a video which is also published on Colic Calm's Youtube.com channel.  The video repeats and reinforces many of the same false and misleading statements in the product packaging.  For example the video states:

> Colic Calm treats the source of the problem providing gentle, fast and safe relief for over 90% of babies.  It's an FDA regulated medicine that is made from nine homeopathic ingredients including chamomile, aloe, lemon balm and others.  It works synergistically to naturally provide digestive aid and gas relief while encouraging baby's body to heal itself.



### b.  Colic Calm Plus

50.     Defendants' suggested retail price for Colic Calm Plus is $23.95 for a two ounce bottle, and the product can be purchased for approximately that amount. Compared to regular strength Colic Calm, Defendants charge a $5.00 premium for Colic Calm Plus.

51.     The label for Colic Calm Plus states that it is an "Enhanced Formula" providing "Extra Support."  It also promises consumers that the product is pure and natural, safe and gentle and fast acting.



52.     The label further states: "For symptomatic relief of GAS COLIC REFLUX", "Even Treats Hiccups."

53.     The label further states that "Symptom relief is achieved through stimulation of the body's self-healing properties" and that the product "[t]emporarily relieves the symptoms of restlessness and irritability that can result from colic, gas, teething and gastrointestinal distress including bloating, stomach cramping and acid reflux."

54.     The Colic Calm Plus label also reads "*Regulated by the FDA, homeopathic remedies are safe and effective.*" (emphasis in original).

55.     The Colic Calm Plus label bears a seal which reads "PEDIATRICIAN RECOMMENDED ALL NATURAL."  The same seal appears on the label of both Colic Calm and Tummy Calm.

56.    The Colic Calm Plus label also tells consumers that "millions of children around the world take homeopathic medicines as recommended by their health care practitioners."

57.    The label for enhanced strength Colic Calm Plus lists the same nine homeopathic ingredients as regular Colic Calm.  However, all but one of the ingredients are at a homeopathic concentration *ten million* (10,000,000) *times lower* than the regular strength product.

58.    The active ingredient list on the Colic Calm Plus label reads: Aloe Socotrina (Aloe) 12x, Carbo Vegetabilis (Vegetable Charcoal) 1x, Carum Carvi (Caraway) 12x, Chamomilla (Chamomile) 12x, Foeniculum Vulgare (Fennel) 12x, Melissa Officinalis (Lemon Balm) 12x, Mentha Piperita (Peppermint) 12x, Prunus Spinosa (Blackthorn) 12x, and Zingiber Officinale (Ginger) 12x.  The active ingredients also include the following additional homeopathic ingredients: Asafoetidam, Chincona Officinalis and Magnesia Phosphorica at 12x concentrations and states "*3 added remedies for extra support."  As explained below, the term "12x" associated with all but one of the ingredients indicates the ingredients is diluted down to one-one trillionth (1/1,000,000,000,000) of its original strength.

| Active Ingredients | Dilution |
| --- | --- |
| Aloe Socotrina | 12x (1/1,000,000,000,000) |
| Asafoetida | 12x (1/1,000,000,000,000) |
| Carbo Vegetabilis | 1x (1/10) |
| Carum Carvi | 12x (1/1,000,000,000,000) |
| Chamomilla | 12x (1/1,000,000,000,000) |
| Chinchona Officinalis | 12x (1/1,000,000,000,000) |
| Foeniculum Vulgare | 12x (1/1,000,000,000,000) |
| Magnesia Phosphorica | 12x (1/1,000,000,000,000) |
| Melissa Officinali | 12x (1/1,000,000,000,000) |
| Mentha Piperita | 12x (1/1,000,000,000,000) |
| Prunus Spinosa | 12x (1/1,000,000,000,000) |
| Zingiber Officinale | 12x (1/1,000,000,000,000) |

59.    The label indicates that Colic Calm Plus contains the following inactive ingredients: Citric acid, Glycerin, Potassium benzoate, Potassium citrate, purified water, Sorbic acid and Xylitol.

60.    The label also provides the proper dosage for Colic Calm Plus: ¼ teaspoon for children under 20 pounds and ½ teaspoon for children over 20 pounds. If needed, repeat every thirty minutes for up to 3 doses or as directed by a physician. Do not exceed 6 doses per day.

61.    The package insert for Colic Calm Plus reads:

- "FDA-regulated medicine · Safe, gentle and effective";
- "Instead of relying on only one active ingredient or merely suppressing symptoms, the twelve synergistic ingredients in Colic Calm Plus, work together to provide multi-symptom relief;" and
- "most babies experience relief within minutes of their first dose of Colic Calm Plus. … Sometimes it takes a few days before new positive relief associations can be made with Colic Calm Plus. We recommend giving Colic Calm Plus at least one week to fully work its wonders."

62.    Defendants' maintain on the coliccalm.com website that "[o]ur Plus formula is enhanced for additional gas adsorption [sic] properties and contains all of the natural ingredients of regular strength Colic Calm Plus three additional homeopathic remedies for additional digestive support. No other formula can match its amazing healing properties to quickly and safely eliminate the symptoms of infant gas, colic and reflux."

63.    Defendants' website refers to Colic Calm and Colic Calm Plus as "The only gripe water that is homeopathic and FDA regulated for safety and effectiveness."

### c. <u>Tummy Calm</u>

64.    Defendants launched Tummy Calm in 2012, to piggyback on the success of their flagship product Colic Calm.  The product is nearly identical to Colic Calm and Colic Calm Plus, but is marketed to children of all ages.

65.    The suggested retail price of Tummy Calm is $17.95 for a two ounce bottle and the product can be purchased for approximately that amount.

66.    Though Colic Calm was created in two months in Defendant Lawrence's kitchen, Defendants maintain that Tummy Calm was launched after years of research and development.

#### i.  **Product Labels and Packaging**

67.    The label for Tummy Calm states that it provides "Pure and Natural Gas Relief and "Also Relieves: Bloating, Upset Stomach and Hiccups."  It also promises consumers that the product is pure and natural, safe and gentle and fast acting.

68.    The Tummy Calm label bears a seal which reads: "PEDIATRICIAN RECOMMENDED ALL NATURAL."  The same seal appears on the label of both Colic Calm and Colic Calm Plus.



69.     The active ingredient list on the Tummy Calm label reads: Calcaria Phosphorica  12x, Carbo Vegetabilis 2x, Chamomilla 12x, Colocynthis 12x, Lycopodium 12x, Moschus 12x, Natrum Muriaticum 12x, and Silicea12x. and Thuja 12x.  Like Colic Calm Plus, all but one of these ingredients are diluted down to one-one trillionth (1/1,000,000,000,000) of their original strength.

| Active Ingredients | Dilution | Purpose |
| --- | --- | --- |
| Calcarea Phosphorica | 12x (1/100,000,000,000) | gas relief, teething |
| Carbo Vegetabilis | 2x (1/100) | gas relief, hiccups |
| Chamomilla | 12x (1/100,000,000,000) | calming and soothing, hiccups |
| Colocynthis | 12x (1/100,000,000,000) | gas relief |
| Lycopodium | 12x (1/100,000,000,000) | bloating, gas relief |
| Moschus | 12x (1/100,000,000,000) | upset stomach |
| Natrum Muriaticum | 12x (1/100,000,000,000) | bloating, upset stomach |
| Silicea | 12x (1/100,000,000,000) | burping, upset stomach |
| Thuja | 12x (1/100,000,000,000) | upset stomach, gas relief |

70.     The label indicates that Colic Calm Plus contains the following inactive ingredients: citric acid, glycerin, potassium benzoate, potassium citrate, purified water, sorbic acid and Xylitol.

71.     The label also provides the proper dosage for Tummy Calm: ¼ teaspoon for children under 20 pounds and ½ teaspoon for children over 20 pounds.  If needed, repeat up to 3 doses every thirty minutes or as directed by a physician.  Do not exceed 6 full doses in 24 hours.

72.     The package insert for Tummy Calm reads:

- "FDA-regulated medicine · Safe, gentle and effective;"

- "[i]nstead of relying on only one active ingredient, the many synergistic ingredients in Tummy Calm, work together to provide multi-symptom relief;" and

- "most children experience relief within minutes of their first dose of Tummy Calm.  … Sometimes it takes a few days before new positive relief associations can be made with Tummy Calm."

73.    The Tummy Calm label, including the package insert is listed on the FDA Label Online Repository under the marketing category "Unapproved Homeopathic."

74.    The Tummy Calm database entry on the FDA Online Label Repository is annexed hereto as Exhibit B (retrieved 10/28/2014).  Accompanying the label is the following FDA disclaimer:  "Disclaimer: This homeopathic product has not been evaluated by the Food and Drug Administration for safety or efficacy.  FDA is not aware of scientific evidence to support homeopathy as effective."

### ii.  **Advertising and Marketing**

75.    Defendants promote Tummy Calm on the Colic Calm website and the Colic Calm Youtube.com channel.



76.    They also maintain a separate website for the promotion of Tummy Calm located at www.tummycalm.com.

77.    The Tummy Calm website reinforces the false and misleading representations on the Tummy Calm packaging including the claims that the product is all natural, "FDA-Registered · Safe, gentle and effective in minutes," and contains a "synergistic combination of remedies."

78.    The Tummy Calm website reads: "Homeopathic medicines comply with similar regulatory processes for safety and efficacy as regular pharmaceuticals."

79.     The Tummy Calm website also states that, "Nature has provided us with the safest and most effective remedies, all of which have individually proven themselves valuable over the past centuries.  It is Tummy Calm's unique synergistic combination that makes it even more wondrous."

80.     The Tummy Calm website explains in more detail the purported effects of each active ingredient as indicated on the Tummy Calm label.  The website notes:

a.  **Calacarea Phosphorica** Relieves built-up gas pressure in the abdomen. Flatulence often causes cramp-like and aching pains in the stomach, which is relieved by calcarea phosphorica, as gas is moved through digestive system and passed. Also soothes pain due to teething and slow dentition.

b.  **Chamomilla** Great for easing the symptoms of teething – sore gums, upset stomach from increased saliva production, and irritability. Chamomilla is one of the best and most commonly used remedies for insomnia and restlessness because it is calming and soothing for both the digestive and nervous systems.

c.  **Colocynthis** Relieves built-up gas pressure in the abdomen. Flatulence and rumbling, which often cause cramp-like and aching pains in the stomach, are relieved as gas is moved through digestive system and passed. Also soothes pain due to teething and slow dentition.

d.  **Lycopodium** Highly effective for easing feelings of tension and discomfort in the stomach from gas and bloating, especially after eating. Long used to move along flatulence, rumbling and gurgling in the abdomen.

e.  **Moschus** An excellent digestive aid, known for its ability to soothe painful sensations of upset stomach caused by eating and drinking. Also provides relief of pressure in the stomach and anxiety that often accompanies feelings of being overfull.

f. **Natrum Muraiticum** Eases the gurgling feeling of air bubbles in the stomach and intestines, most often after meals. Recognized as an antispasmodic for the smooth muscles of the gastrointestinal tract. Very soothing and relaxing for the entire digestive system.

g. **Silicea** Outstanding for soothing discomfort resulting from excessive belching of gas, primarily after eating and drinking. Excellent digestive aid that calms the stomach and inhibits gas pressure from coming upward through the esophagus.

h. **Carbo Vegetabilis** Recognized for its ability to eliminate gas and toxins in the body. Gently attracts and traps gas throughout the entire digestive system, providing unmatched relief from bloating, abdominal distention with cramping pains, upset stomach, belching and hiccups. Used effectively for natural digestive relief for over 5,000 years.

i. **Thuja** Useful as an overall digestive aid in relieving gas pressure through facilitating burping and expulsion of gas from the stomach and intestines. Highly effective in relieving pressure from gas in the abdomen and the upset that often accompanies the discomfort.

81.    The Tummy Calm website includes a series of videos which are also available on Colic Calm's Youtube.com channel that reinforce the false and misleading statements on the Tummy Calm packaging.

82.    One such video states:

> Tummy Calm is made from nine homeopathic ingredients including chamomile, lycopodium, vegetable carbon and others. It works synergistically to naturally provide gas relief and digestive aid, while encouraging the child's body to heal itself.

**D.**    **Homeopathy Is A Pseudoscience**

83.    Homeopathy is based on two nonsensical principles: "like-cures-like," whereby a substance that causes a symptom is used in diluted form to treat the same symptom in illness; and "ultra-dilution" whereby the more a substance is diluted, the more potent it becomes.

84.    The Colic Calm website describes homeopathy as follows: "[h]omeopathy is a natural medical system discovered two centuries ago by German physician and chemist, Samuel Hahnemann. The fundamental theory of homeopathy is based on similia similibus curentur ("like shall be cured by like") and uses active organic medicinal substances at infinitesimal doses (micro-doses)."

85.    As Defendants explain on the Colic Calm website: "Each homeopathic medicine is obtained from a precise and controlled process of successive homeopathic 'dilutions'. This process attenuates the original organic solution and transforms it into a therapeutically active medicine."

86.    Defendants use the decimal scale to describe the dilution ratio of its "active ingredients."  Under the decimal scale, the active substance is diluted by a factor of 10 at each stage and is expressed as #X.  Dilution often continues until none of the original substance remains.  For example, eleven of the twelve homeopathic ingredients in Colic Calm Plus and eight of the nine ingredients in Tummy Calm are

listed as 12X dilutions.  This means these ingredients are diluted to one-one trillionth (1/1,000,000,000,000) of their original strength.

87.     Modern science refutes the principles of homeopathy.  The homeopathic contention that decreasing the concentration (or dosage) of a drug increases its therapeutic activity is contrary to modern medicine.  Time after time, properly conducted scientific studies have proven that homeopathic remedies work no better than simple placebos.  *See* Ben Goldacre, "*What's Wrong With Homeopathy*," THE GUARDIAN: SCIENCE (Nov. 16, 2007), *available at* http://www.theguardian.com/science/2007/nov/16/sciencenews.g2 (last visited January 8, 2015).

88.     Because they are so heavily diluted, homeopathic remedies do not contain any pharmacologically active molecules.  The idea that such remedies actually have a pharmacological effect violates fundamental principles of science.

89.     Modern homeopaths have proposed that water has a memory that allows homeopathic preparations to work without containing the original substance. According to modern medical science, the notion that dilutions can maintain an imprint of substances previously dissolved in them is scientifically implausible.  *See* House of Commons, Science and Technology Committee, Evidence Check 2: Homeopathy, Fourth Report, 2009-10, HC 45, ¶ 61 (U.K.).

90.     The theory that homeopathic remedies are effective has been rejected repeatedly by medical science.  For example, in a study of homeopathic remedies commissioned by the British Government, medical scientists repeatedly expressed their criticisms of homeopathy and its proponents:

> We regret that advocates of homeopathy … choose to rely on, and promulgate, selective approaches to the treatment of evidence base as this risks confusing or misleading the public, the media and policy makers . . . .

*Id.* at ¶73.

In our view, the systematic reviews and meta-analyses conclusively demonstrate that homeopathic products perform no better than placebos.

*Id.* at ¶70.

There has been enough testing of homeopathy and plenty of evidence showing that it is not efficacious . . . .

*Id.* at ¶77.

For patient choice to be real choice, patients must be adequately informed to understand the implications of treatments. For homeopathy this would certainly require an explanation that homeopathy is a placebo. When this is not done, patient choice is meaningless. When it is done, the effectiveness of the placebo – that is, homeopathy – may be diminished.

*Id.* at ¶70.

91.    After its investigation, the British Government found that:

[T]he evidence base shows that homeopathy is not efficacious (that is, it does not work beyond the placebo effect) and that explanations for why homeopathy would work are scientifically implausible. … The [Science and Technology] Committee concluded, given that the existing scientific literature showed no good evidence of efficacy, that further clinical trials of homeopathy could not be justified… In the Committee's view, homeopathy is a placebo treatment and the Government should have a policy on prescribing placebos. Prescribing of placebos is not consistent with informed patient choice, which the Government claims is very important, as it means patients do not have all the information needed to make choice meaningful… Beyond ethical issues and the integrity of the doctor-patient relationship, prescribing pure placebos is bad medicine. Their effect is unreliable and unpredictable and cannot form the sole basis of any treatment on the NHS.

*See* Press Release, Science and Technology Committee, MPS Urge Government to Withdraw NHS Funding and MHRA Licensing of Homeopathy (Feb. 22, 2010), *available at* http://www.parliament.uk/business/committees/committees-archive/science-technology/s-t-homeopathy-inquiry/ (last visited January 8, 2015).

92.    In 2005, Dr. Matthias Egger and colleagues from the University of Berne in Switzerland analyzed 110 placebo-controlled homeopathy trials and compared the results to the same number of trials of conventional drugs. Published

in the British journal *The Lancet*, the study found that the benefits from the homoeopathic remedies were entirely compatible with the placebo effect. The researchers continued: "the findings were less surprising than the fact that debate over homeopathy continues, despite 150 years of unfavorable findings . . . ." Aijing Shang, *Are The Clinical Effects of Homoeopathy Placebo Effects? Comparative Study of Placebo-controlled Trials of Homoeopathy and Allopathy,* THE LANCET, Vol. 366, at 726-32 (Aug. 27, 2005), *abstract available at* http://www.thelancet.com/journals/lancet/article/PIIS0140-6736(05)67177-2/abstract.

93.    Likewise, the American medical establishment has long rejected the science underlying homeopathic studies because the compounds are too diluted to retain any meaningful, measurable medicinal value. "Science tells us that most of these medicines aren't useful," said Dr. Wayne Yankus, a Midland Park pediatrician, discussing the efficacy of homeopathic remedies. *See* Colleen Diskin, *Parents Look To Homeopathy As Alternative To Over-The-Counter Cold Medicines,* THE RECORD (Dec. 19, 2010), http://www.northjersey.com/news/112144649_Over-the-counter_alternatives.html (last visited January 8, 2015).

94.    As Professor David Colquhoun, Professor of Pharmacology at University College London, put it: "If homeopathy worked the whole of chemistry and physics would have to be overturned." *See* House of Commons, Science and Technology Committee, Evidence Check 2: Homeopathy, Fourth Report, 2009-10, HC 45 (U.K.).

95.    Furthermore, reliable clinical trials repeatedly demonstrate that homeopathic remedies are only as effective as placebos. The authors of the Homeopathy Comparative Study, cited above, concluded that "*when analyses were restricted to large trials of higher quality there was no convincing evidence that homeopathy was superior to placebo*." (emphasis added).

96.    The American Medical Association and the National Health Service have reached the same conclusion, and both have issued statements that no scientific evidence supports the use of homeopathic treatments in medicine.

97.    Even supporters of alternative medicine, such as the National Center for Complementary and Alternative Medicine, have been forced to admit that "[t]here is [] no condition for which homeopathy has been proven effective."

**E.    The FDA Does Not Approve Or Strictly Regulate Homeopathic Remedies**

98.    Federal Regulations provide that it is unlawful to suggest that a product is FDA approved when it is merely registered with the FDA.  21 CFR § 207.39 provide: "Any representation that creates an impression of official approval because of registration or possession of registration number or NDC number is misleading and constitutes misbranding."

99.    Defendants have falsely and misleadingly suggested that the Products have been reviewed and approved by the FDA for safety and efficacy.  However, as indicated on the FDA Online Label Repository Database Entries for both Colic Calm and Tummy Calm (but not on the product label themselves), the Products "have not been evaluated by the Food and Drug Administration for safety or efficacy" and "FDA is not aware of scientific evidence to support homeopathy as effective."

100.    Defendants suggest that the Products are subject to FDA scrutiny for safety and efficacy with statements like:

- "FDA regulated for safety and effectiveness;"
- "Colic Calm uses homeopathic ingredients which the FDA recognizes as medically effective in the treatment of the digestive discomfort associated with infant colic, gas and reflux;"
- "regulated by the FDA, homeopathic medicines are safe and effective;"
- "FDA regulated medicine · Safe, gentle and effective;"

- "[h]omeopathic medicines comply with similar regulatory processes for safety and efficacy as regular pharmaceuticals;"

- "There are other gripe waters on the market that are sold as "dietary supplements".  Be careful! These are not regulated by the FDA and fall under loose dietary supplement guidelines;"

- Colic Calm and Tummy Calm "are FDA regulated homeopathic medicines and they are manufactured under the strictest standards for purity and efficacy;" and

- "homeopathics have special facilities that are FDA approved and inspected .. [t]he quality, the purity, the efficacy, the strength, all of those are covered with homeopathic medicines."

101.   Moreover, Defendants brazenly admit on their website the reasons for misrepresenting the Products' regulatory status, stating, "Why is it so important for a Gripe Water to be FDA regulated? Safety is the #1 Concern of Parents. Effectiveness is the #2 Concern of Parents."

102.   While OTC homeopathic products, including the Homeopathic Gas Relief Products are classified by the FDA as drugs, they are not regulated by the FDA for safety or efficacy.

103.   Instead, the FDA has abdicated its regulatory role in favor of industry self-regulation.

104.   Manufacturers of non-homeopathic OTC drug products are required to prove to the FDA that their products are both safe and effective through extensive clinical testing.  To determine whether *non*-homeopathic OTC drugs are safe, effective, and not misbranded, the FDA subjects non-homeopathic OTC drugs to stringent evaluations and testing using a drug monograph system created by the FDA.  *See* 21 C.F.R. §§ 330.1, 330.10.  In drafting the monographs, the FDA divided the non-homeopathic OTC drugs into drug categories, which were then assigned an

advisory review panel of qualified experts who evaluate the safety and effectiveness of the non-homeopathic OTC drugs.  The panel also reviews the drugs' labeling and advises the FDA Commissioner on the promulgation of monographs establishing conditions under which non-homeopathic OTC drugs listed within each monograph are generally recognized as safe, effective, and not misbranded.  *Id.* § 330.10(a).

105.   Under this system, a manufacturer seeking approval of a new, non-homeopathic OTC drug must submit a detailed new drug application, which must include:

> [E]vidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof.

21 U.S.C. § 355.  Moreover, after the FDA approves a new drug application, any change in the drug's labeling requires a supplement to the application and further approval by the FDA either before or after the change.  21 C.F.R. §§ 314.70(b), (c), 314.71.

106.   In stark contrast, the FDA permits manufacturers of homeopathic OTC drugs to market and sell their products without preapproval provided the active ingredients are listed in a homeopathic industry publication, the Homoeopathic Pharmacopoeia of the United States ("HPUS").  Moreover, the HPUS is not freely and publicly available.  The industry that controls the publication discontinued the print version of the HPUS and charges up to $100 per day for access to the database.

107.   Defendants also maintain that homeopathic OTC drugs are regulated by the FDA while competing dietary supplements are not.  However, this statement is false with respect to efficacy claims.  Dietary supplements manufacturers cannot legally claim to diagnose, mitigate, treat, cure, or prevent any disease.  However,

provided OTC homeopathic drugs comply with industry standards and manufacturing protocols, manufacturers do not need preapproval from the FDA before making such claims for self-limiting disease conditions amenable to self-diagnosis, such a colds, coughs and indigestion.

108.    One Court in this District has commented on the FDA's abdication of its regulatory role with respect to the efficacy and safety of homeopathic OTC products. *See Delarosa v. Boiron*, 818 F. Supp.2d 1177, 1191 (C.D. Cal. 2011) (certifying a class of consumers who purchased Boiron's homeopathic flu remedy, oscillococcinum).  In *Boiron*, "the Court conclude[d] that the FDA has largely abdicated any role it might have had in creating standards for homeopathic OTC drugs, and has instead attempted to delegate this authority to the non-governmental organization that determines whether the homeopathic substances should be included in the HPUS."  The *Boiron* Court also noted that "the FDA explicitly states that it makes no guarantee about the safety or efficacy of homeopathic drugs, even if they meet the unknown standards for inclusion in the HPUS."  Indeed, in recent years several courts have certified nationwide classes of consumers against manufacturers of homeopathic products.  *See e.g. Forcellati v. Hyland's, Inc*., 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ("*Forcellati I*").  In *Forcellati I*, Chief Judge George H. King certified a nationwide class of consumers who purchased a group of similar homeopathic children's homeopathic remedies under the MMWA, UCL, FAL, CLRA, breach of express warranty, and breach of implied warranty.  The same Court subsequently denied Defendant's motion for summary judgment of the certified class claims.  *Forcellati v. Hyland's, Inc.,* 2015 U.S. Dist. LEXIS 3867, 7 (C.D. Cal. Jan. 12, 2015) ("*Forcellati II*") ("All that the FDA requires of homeopathic drugs is that they comply with basic labeling requirements.").

109.    Moreover, Defendants maintain the ingredients in the Products have been subject to "extensive clinical testing to substantiate their safety and

effectiveness in order to be listed in the HPUS." These statements are false and misleading designed to falsely assure consumers that the Products are effective, when they are not. The requirements for publication in the HPUS, which has been in continuous publication since 1897, did not historically require any clinical testing. Upon information and belief, none of the active ingredients in the Products required any clinical testing before they were added to the HPUS.

110. Finally, despite Defendants' claim to the contrary, the FDA has not approved the facilities in which the Products are manufactured. The FDA does not approve any manufacturing facilities. *See* http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm047470.htm ("FDA does not "approve" health care facilities, laboratories, or manufacturers"). Defendants' statements to the contrary are merely a transparent effort to add an air of legitimacy to their fraudulent products.

## F. The Homeopathic Gas Relief Products Are Not All Natural

111. Ubiquitous in the Defendants' marketing and advertising of the Products is the claim that each of the Products are "All Natural." However, each of the Products contains xylitol, which is not all natural in its commercially available form.

112. Xylitol is a sweetening agent derived from the crushed fibers of sugar cane in birch wood and/or corn through a harsh multi-step chemical reaction that involves the use of sulfuric acid, calcium oxide, phosphoric acid and active charcoal. Industrial production of xylitol starts from a plant product xylan, which is hydrolyzed into xylose and catalytically hydrogenated into xylitol.

113. The extensive chemical processing required to create commercial xylitol make this ingredient anything but natural. Moreover, commercial production of xylitol often requires the use of genetically modified corn, which cannot be described as natural.

114.   The United States Department of Agriculture ("USDA") has issued a Food Standards and Labeling Policy Book, which states that the term "natural" may be used on labeling for products that contain processed ingredients, only where such ingredients are subjected to "minimal" processing, and that '[r]elatively severe processes. *e.g.*, solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing." Office of Pol'y, Program & Emp. Dev. Food Safety & Inspection Serv., U.S. Dep't of Agric., Food Standards and Labeling Policy Book (2005).

115.   Similarly, the United States Department of Agriculture defines "nonsynthetic (natural)" as "a substance that is derived from mineral, plant or animal matter and does not undergo a synthetic process…" 7 CFR § 205.2.  In contrast, "Synthetic" means "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal or mineral source. …" 7 U.S.C. § 6502(21).

116.   The National Advertising Division of the Better Business Bureau has found that a "natural" ingredient does not include one that while "literally sourced in nature … is, nevertheless subjected to extensive processing before metamorphosing into the" ingredient that is included in the final product. Tom's of Maine (Tom's of Maine Natural Mouthwash, Report #3740, NAD/CARU Case Reports 4 (June 1998).

**G.**    **Plaintiff's Purchase of the Homeopathic Gas Relief Products**

117.   Plaintiff Thesier-Hendricks purchased Colic Calm approximately five times between March 2014 and August 2014 for her infant grandson who was suffering from colic, upset stomach and gas.

118.   She purchased Colic Calm at CVS and Walgreens retail stores in Montgomery, Alabama.  On each occasion, she paid approximately $19.00 per 2 oz. bottle.

119.    In purchasing Colic Calm, Plaintiff relied upon the various representations Defendants made on the product's label and package insert, including claims that that Colic Calm is effective, "safe and gentle," "all natural," provides "symptomatic relief for gas, colic and upset stomach," "fast acting," and "works within minutes."

120.    Plaintiff used Colic Calm on her grandson as directed but did not obtain the advertised relief from these symptoms, nor any benefits, from using Colic Calm.

121.    Plaintiff would not have purchased Colic Calm if she had known that it was not effective for treating colic, upset stomach and gas.

## CLASS ACTION ALLEGATIONS

122.    Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased the Products and did not receive a full refund.

123.    Excluded from the Class are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.  Also excluded from the Class are persons or entities that purchased the Products for purposes of resale.

124.    Plaintiff is a member of the Class she seeks to represent.

125.    The Class is so numerous that joinder of all members is impractical. Although Plaintiff does not yet know the exact size of the Class, the Products are sold in major retailers across the United States, including Babies R' Us, CVS and Walgreens pharmacy stores.  In addition, the products are sold at major online retailers including Amazon.com, Diapers.com and Walmart.com.  Upon information and belief and based upon Defendants' statements, the Class includes more than one million members.  Accordingly, joinder is impracticable.

126.    The Class is ascertainable because the Class Members can be identified by objective criteria.  Individual notice can be provided to Class Members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

127.    There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to:

(a)    Whether Defendants violated the Magnuson-Moss Act, 15 U.S.C. § 201, *et seq.*;

(b)    Whether Defendants violated the CLRA;

(c)    Whether Defendants violated the UCL;

(d)    Whether Defendants violated the FAL;

(e)    Whether Defendants breached an express warranty made to Plaintiff and the Class;

(f)    Whether Defendants' marketing of the Homeopathic Gas Relief Products is false, misleading, and/or deceptive;

(g)    Whether Defendants' marketing of the Homeopathic Gas Relief Products is unfair;

(h)    Whether the Homeopathic Gas Relief Products are efficacious, for the treatment of gas, bloating  upset stomach, and hiccups;

(i)    Whether Homeopathic Gas Relief Products work within minutes for the treatment of gas, upset stomach, and hiccups;

(j)    Whether Homeopathic Gas Relief Products work synergistically for the treatment of gas, upset stomach, and hiccups;

(k)    Whether Defendants were unjustly enriched by their conduct;

(l)    Whether Class Members suffered an ascertainable loss as a result of Defendants' misrepresentations; and

(m)   Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and the Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

128.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff and all members of the Class have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

129.   Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

130.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

# COUNT I

## Violation of Magnuson-Moss Warranty Act

## (15 U.S.C. § 2301, *et seq.*)

131.   Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

132.   Plaintiff brings this claim individually and on behalf of the members of the Class.

133.   The Homeopathic Gas Relief Products are consumer products as defined in 15 U.S.C. § 2301(1).

134.   Plaintiff and the Class Members are consumers as defined in 15 U.S.C. § 2301(3).

135.   Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

136.   In connection with the sale of the Products, Defendants issued written express warranties as defined in 15 U.S.C. § 2301(6), including warranties that the Products: 1) were all natural, 2) effectively relieve infant and toddler gas problems, including bloating, upset stomach, colic, reflux or hiccups; 3) were 90% effective; 4) work within minutes; 5) work synergistically and 6) were FDA approved.

137.   Defendants breached the written warranties because each of the express warranties is provably false and misleading.  The Products are not all natural because they contain xylitol, a sweetener which is not all natural.  Moreover, the highly diluted ingredients in the Products have no effect on the causes or symptoms of infants and toddler gas, upset stomach, colic, reflux and hiccups.  They are not 90% effective; they do not work within minutes; they do not work synergistically; and they are not FDA approved.

138.   By reason of Defendants' breach of the express written warranties involving the Products enumerated above, Defendants have violated the statutory

rights due Plaintiff and the Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and the Class Members.

139.   Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products if they had known the truth about them.

140.   Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendants' breaches of written warranties, which damages constitute the full purchase price of the Products.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the Class for and in connection with the commencement and prosecution of this action.

141.   Prior to filing this action, Plaintiff, by and through her counsel, provided Defendants with written notice of her claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendants that she was acting on behalf of a Class defined as all persons in the United States who purchased the Products.

## COUNT II

### Violation of the Consumer Legal Remedies Act ("CLRA")

### (Civil Code §§ 1750, *et. seq.*)

142.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

143.   Plaintiff brings this Count individually and on behalf of the Class.

144.   Plaintiff and the Class Members are consumers who purchased the Homeopathic Gas Relief Products for personal, family, or household purposes. Accordingly, Plaintiff and the Class Members are "consumers" as that term is

defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiff and the Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of homeopathic products.

145.   At all relevant times, the Products constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

146.   At all relevant times, Defendants were "persons" as that term is defined in Civ. Code § 1761(c).

147.   At all relevant times, Plaintiff's purchase of the Products, and the purchases of other Class Members, constituted  "transactions" as that term is defined in Cal. Civ. Code § 1761(e).  Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

148.   The policies, acts, and practices described in this Complaint were intended to and did result in the sale of the Products to Plaintiff and the Class. Defendants' practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

149.   Defendants represented that the Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal. Civ. Code § 1770(a)(5).

150.   Defendants misrepresented the source, sponsorship, approval, or certification of Colic Calm by falsely claiming that highly well regarded organizations including the Public Broadcasting Service recognize the product's safety and effectiveness in violation of  Cal. Civ. Code § 1770(a)(2).

151.   Defendants also falsely and misleadingly misrepresented to consumers that the Products were approved by the FDA in violation of Cal. Civ. Code § 1770(a)(5).

152.    Defendants also falsely represented that the Products violated Cal. Civ. Code § 1770(a)(5) by claiming that each of the Products: 1) were all natural; 2) effectively relieve infant and toddler gas problems, including gas, bloating, upset stomach, or hiccups; 3) were 90% effective; 4) worked within minutes; and 5) contained ingredients which worked synergistically with their other ingredients.

153.    Defendants represented that the Products were of a particular standard, quality, or grade in violation of Cal. Civ. Code § 1770(a)(7) by representing that each of the Products: 1) were all natural; 2) effectively relieve infant and toddler gas problems, including gas, bloating, upset stomach, or hiccups; 3) were 90% effective; 4) were FDA approved, 5) worked synergistically and 6) worked within minutes.

154.    Defendants advertised the Products with intent not to sell them as advertised in violation of Cal. Civ. Code § 1770(a)(9) by representing that each of the Products: 1) were all natural; 2) were FDA approved; 3) effectively relieve infant and toddler gas problems, including gas, bloating, upset stomach, or hiccups; 3) 90% effective; 4) worked within minutes; 5) contained ingredients which worked synergistically with their other ingredients; and 6) were FDA approved.

155.    Plaintiff and the Class Members suffered injuries caused by Defendants' misrepresentations because: (a) Plaintiff and the Class Members would not have purchased the Products if they had known the true facts; (b) Plaintiff and the Class paid a price for the Products due to the mislabeling of the Products; and (c) the Products did not have the level of quality, effectiveness, or value as promised.

156.    Prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a). On November 6, 2014, Plaintiff sent Defendants a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770.  A true and correct copy of Plaintiff's letter is attached as Exhibit C.

157.   Defendants were further advised that in the event that the relief requested had not been provided within thirty (30) days, Plaintiff would bring an action for damages pursuant to the CLRA.

158.   On November 10, 2014, Defendants received the letter.  On November 26, 2014, defendant TJL sent Plaintiff a letter acknowledging receipt of the CLRA notice letter.

159.   Wherefore, Plaintiff seeks damages, restitution and injunctive relief for this violation of the CLRA.

## COUNT III

## Violation of the False Advertising Law

## (Business & Professions Code §§17500 *et seq.*)

160.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

161.   Plaintiff brings this Count on behalf of the Class.

162.   California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

163.   Throughout the Class Period, Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of the Products, as described above, and including, but not limited to, that the Products: 1) were all natural; 2) were FDA approved ;3) effectively relieve infant and toddler gas problems, including gas, bloating, upset stomach, or

hiccups; 4) were 90% effective; 5) worked within minutes; and 6) contained ingredients which worked synergistically with their other ingredients.

164.   Defendants knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

165.   Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

166.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' FAL violation because: (a) Plaintiff and the Class would not have purchased the Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to Defendants false and misleading representations concerning the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

167.   Plaintiff brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers.  Plaintiff and the Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## COUNT IV

## Violation of the "Unlawful Prong" of the Unfair Competition Law
## (Bus. & Prof. Code §§ 17200 *et seq.*)

168.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

169.   Plaintiff brings this Count on behalf of the Class.

170.   The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for UCL violations.

171.   "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

172.   Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

173.   Defendants violated the "unlawful prong" by violating the CLRA, the FAL, and the Magnuson-Moss Warranty Act, as well as by breaching express warranties as described herein and numerous federal regulations including but not limited to 21 CFR § 207.39.

174.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unlawful prong" violation because: (a) Plaintiff and the Class would not have purchased the Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to Defendants false and misleading representations concerning the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

175.   Pursuant to Bus. & Prof. Code §17203, Plaintiff and the Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair

competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT V

### Violation of the "Fraudulent Prong" of the Unfair Competition Law
### (Bus. & Prof. Code §§ 17200 *et seq.*)

176.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

177.   Plaintiff brings this Count on behalf of the Class.

178.   The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

179.   Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL because Defendants represented that the Products: 1) were all natural; 2) were FDA approved; 3) effectively relieve infant and toddler gas problems, including gas, bloating, upset stomach, or hiccups; 4) were 90% effective; 5) worked within minutes; and 6) contained ingredients which worked synergistically with their other ingredients.

180.   Plaintiff and the Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Products, and they acted reasonably when they purchased Defendants' Products based on their belief that Defendants' representations were true.

181.   Defendants knew or should have known, through the exercise of reasonable care, that their representations about the Products were untrue and misleading.

182.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "fraudulent prong" violation because: (a) Plaintiff and the Class would not have purchased the Products if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiff and the Class paid a price due to Defendants false and misleading representations concerning the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

183.   Pursuant to Bus. & Prof. Code §17203, Plaintiff and the Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## COUNT VI

### Violation of the "Unfair Prong" of the Unfair Competition Law
### (Bus. & Prof. Code §§ 17200 *et seq.*)

184.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

185.   Plaintiff brings this Count on behalf of the Class.

186.   The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

187.   Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

Defendants' conduct is unfair in that the harm to Plaintiff and the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

188.    Defendants' practices as described herein are of no benefit to consumers who are tricked into paying exorbitant prices for placebos.  Defendants' practice of injecting misinformation into the marketplace about homeopathy and the treatment of gas, upset stomach, bloating and hiccups in children. By falsely representing that the Products: 1) effectively relieve infant and toddler gas problems, including gas, bloating, upset stomach, or hiccups; 2) were 90% effective; 3) worked within minutes; 4) contained ingredients which worked synergistically with their other ingredients; 5) were FDA approved; and 6) were all natural.

189.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unfair prong" violation because: (a) Plaintiff and the Class would not have purchased the Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to Defendants false and misleading representations concerning the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

190.    Pursuant to Bus. & Prof. Code §17203, Plaintiff, and the Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## COUNT VII

## Breach Of Express Warranty

191.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

192.   Plaintiff brings this Count individually and on behalf of the members of the Class.

193.   In connection with the sale of the Products, Defendants issued express warranties concerning the qualities and effects of the Products.  Defendants expressly warranted that the Products: 1) were all natural, 2) effectively relieve infant and toddler gas problems, including bloating, upset stomach, and hiccups, 3) are 90% effective;  4) work within minutes; 5) work synergistically; and 6) were FDA approved.

194.   Defendants' affirmations of fact and promises made to Plaintiff and the Class on the Product labels, packaging materials, advertising and promotional materials, became part of the basis of the bargain between Defendants and Plaintiff and the Class Members, thereby creating express warranties that the Products would conform to Defendants' affirmations of fact, representations, promises, and descriptions.

195.   Defendants breached the written warranties because each of the express warranties is provably false and misleading.  The Products are not all natural because they contain xylitol, a sweetener which is not all natural.  Moreover, the highly diluted ingredients in the Products have no effect on the causes or symptoms of infants and toddler gas, upset stomach, colic, reflux and hiccups.  They are not 90% effective and they do not work within minutes.

196.    Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Products if they had known the true facts; (b) they paid for the Products due to the

mislabeling of the Products; and (c) the Products did not have the quality, effectiveness, or value as promised.   As a result, Plaintiff and the Class have been damaged in the full amount of the purchase price of the Products.

## COUNT VIII

### (Unjust Enrichment)

197.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

198.   Plaintiff brings this cause of action individually and on behalf of the members of the Class.

199.   "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig*., 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

200.   Plaintiff and Class members conferred a benefit on Defendant TJL by purchasing the Products at a premium price.

201.   Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented that the products: 1) were all natural, 2) were FDA approved; 3) effectively relieve infant and toddler gas problems, including bloating, upset stomach, colic, reflux and hiccups, 4) were 90% effective; 5) worked within minutes; and 5) worked synergistically.

202.    Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action;

B.    For an order declaring that the Defendants' conduct violates the statutes and common law causes of action referenced herein;

C.    Awarding compensatory and punitive damages in favor of Plaintiff and members of the Class against Defendants for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.     Awarding injunctive relief against Defendants to prevent Defendants from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.    For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F.    Awarding Plaintiff and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G.    Awarding such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  January 22, 2015

Respectfully submitted,

**BURSOR & FISHER, P.A.**


By:_____*/s/ L. Timothy Fisher*_____
                    L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Julia A. Luster (State Bar No. 295031)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
            apersinger@bursor.com
            jluster@bursor.com

**LEVI & KORSINSKY, LLP**
Shane T. Rowley (*pro hac* to be filed)
Courtney E. Maccarone (*pro hac* to be filed)
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (866) 367-6510
Email: srowley@zlk.com
            cmaccarone@zlk.com

*Counsel for Plaintiff*

1

2 **CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

3     I, Wannita Thesier-Hendricks, declare as follows:

4     1.    I am a plaintiff in this action and a citizen of the State of Alabama. I

5 have personal knowledge of the facts stated herein and, if called as a witness, I could

6 and would testify competently thereto.

7     2.    This is a proper place for trial under Civil Code Section 1780(d) in that

8 a substantial portion of the transaction alleged occurred in the Central District of

9 California because defendant TJL Enterprises, Inc. has its principal place of business

10 in Long Beach, California, which is located in this district. Additionally, upon

11 information and belief, defendant Jacqueline Courtiol-Lawrence resides in this

12 district.

13     3.    While living in Montgomery, Alabama, I purchased Colic Calm over

14 the counter at CVS and Walgreens retail stores. I purchased Colic Calm after I read

15 statements on the Colic Calm label and packaging materials characterizing the

16 product as an effective, all natural, fast acting product that provides symptomatic

17 relief for gas, colic, and upset stomach. These representations were substantial

18 factors influencing my decision to purchase Colic Calm. I would not have purchased

19 Colic Calm had I known that the product was not effective in providing symptomatic

20 relief for gas, colic, and upset stomach.

21     I declare under the penalty of perjury under the laws of the State of Alabama

22 that the foregoing is true and correct, executed on December 13 , 2014 in

23 Montgomery, Alabama.

24

25 WANNITA THESIER-HENDRICKS

26

27

28

# EXHIBIT A

**COLIC CALM- aloe, activated charcoal, caraway oil, chamomile, fennel seed, melissa officinalis, mentha piperita, prunus spinosa flower bud and ginger liquid**
TJL Enterprises Inc.

Disclaimer: This homeopathic product has not been evaluated by the Food and Drug Administration for safety or efficacy. FDA is not aware of scientific evidence to support homeopathy as effective.

----------

# Colic Calm®

# Active ingredient

Aloe Socotrina......................5X

Carbo Vegetabilis.................1X

Carum Carvi........................5X

Chamomilla.........................5X

Foeniculum Vulgare.............5X

Melissa Officinalis...............5X

Mentha Piperita...................5X

Prunus Spinosa....................5X

Zingiber Officinale...............5X

# Purpose

Gas Relief, Bloating, Upset Stomach, Digestive Aid, Calming and Soothing, Hiccups, Colic

# Uses

Temporarily relieves the symptoms of:

- gas
- colic

- congestion
- upset stomach
- bloating
- hiccups

# Warnings

- Do not use if outer seal imprinted with Colic Calm logo on bottle or protective wrap on oral dispenser are broken or missing.
- Stop use and consult a doctor if symptoms last more than 7 days or inflammation, fever or infection occurs.
- As with all medications, it is important to ensure that your child's medical professional is aware of the use of this product.
- Because product is black, a temporarily, harmless, darkening of the stool may occur.
- May stain fabric; protect clothing and furniture.

# Keep out of reach of children

# Directions

| Weight | Dose |
|---|---|
| Under 20 lbs. | 1/4 teaspoon (1.25 mL) |
| Over 20 lbs. | 1/2 teaspoon (2.5 mL) |

- Shake well before use to obtain uniform dark mixture.
- Remove outer seal imprinted with Colic Calm logo from bottle and protective wrap on oral dispenser.
- When symptoms occur, fill enclosed oral dispenser up to indicated dose level and dispense liquid slowly into mouth, between cheek and gums.
- If needed, repeat every 30 minutes for up to 3 doses, or as directed by a physician. Do not exceed 6 full doses in 24 hours.
- Recap bottle and clean oral dispenser.

# Other Information

Please note: Sleep may follow naturally after relief.

Store at room temperature, out of direct sunlight.

# Inactive ingredients

citric acid, glycerin, potassium benzoate, potassium citrate, purified water, sorbic acid, xylitol

# Questions or comments?

Call (877) 321-CALM

Visit us at
www.coliccalm

Or ask your physician, health care practitioner or pharmacist.

# Patient Information

Relief. Pure & Simple.

Thank you for choosing Colic Calm®, the first homeopathic gripe water for the treatment of colic, gas and upset stomach. Our product has helped more than a half million babies…and counting. That's why it's recommended by pediatricians, natural health care practitioners, and pharmacists.

Colic Calm® is:

- FDA-regulated medicine
- Safe, gentle & effective
- Non-habit forming or addictive
- A smart alternative to conventional drugs

Frequently Asked Questions

What is the purpose of Colic Calm® and is it safe for my baby?

Colic Calm® homeopathic medicine provides exceptional relief for discomfort from gas, colic, upset stomach, even hiccups and teething. Importantly, all homeopathic medicines must be manufactured using precise pharmaceutical methods and are regulated as over-the-counter medicines, unlike herbals and dietary supplements.

Colic Calm® is a combination of nine homeopathic remedies, each of which has a long history of safe use. Colic Calm's® formula is non-habit forming and does NOT contain sugar, sodium bicarbonate, simethicone, herbal oils, soy, dairy, wheat, gluten, yeast, animal products, artificial flavors or colors.

What makes Colic Calm® different from other colic preparations?

Instead of relying on only one active ingredient, the many synergistic ingredients in Colic Calm® work together to provide multi-symptom relief and quickly relax baby's digestive & nervous systems. Each dose gently stimulates the body's ability to heal itself, as opposed to merely suppressing symptoms.

How long will it take to work?

Most babies experience relief within minutes of their first dose of Colic Calm®. However, some may take longer before showing noticeable improvement, especially infants over one month of age if they have been symptomatic for a while. Sometimes it takes a few days until new positive relief associations can be made with Colic Calm®.

We recommend giving Colic Calm® at least one week to fully work its wonders. Keep in mind that many babies simply have trouble calming down once the crying cycle has begun, so try to administer Colic Calm® at the first signs. We encourage you to email us at customercare@coliccalm.com or please call us at (877) 321-CALM for helpful customized suggestions that can make a difference.

What are the directions for use?

At the first signs of digestive discomfort, shake bottle to obtain a uniform dark mixture. We recommend starting with half the indicated dose in the weight chart, gradually increasing over the first few days until the full dose is reached. Fill enclosed oral dispenser and dispense liquid slowly into mouth, between cheek and gums. If needed, repeat every 30 minutes for up to 3 doses, or as directed by a physician. Do not exceed the equivalent of 6 full doses for the appropriate weight category per day. Carefully recap bottle, clean oral dispenser and let air-dry after each use.

Note: Colic Calm® can be given prior to feeding or afterwards…whenever baby is experiencing digestive issues. To treat acid indigestion or excessive gas, many parents report excellent results by administering one quarter to one half the recommended dose before feedings when they know that feedings usually result in symptoms. Try not to give Colic Calm® immediately after feeding if baby's stomach is full, as spit-up may occur from the added pressure.

What is the best way to administer Colic Calm®?

Babies love the naturally sweet taste of Colic Calm®. Most swallow it easily when the included oral dispenser is placed between the gums and cheek towards the back of the mouth and dispensed slowly.

Note: A dispensing alternative is the NumiMed Dispenser, also developed by a mother "in need" and available at www.coliccalm.com. We recommend its purchase along with Colic Calm®. It is often less messy when baby sucks the sweet, dark formula directly from the pacifier-like

NumiMed. Additionally, the NumiMed can be used for any oral medications you are giving your baby.

What if my baby spits up Colic Calm®?

Some spitting up is normal. One factor is temperature. Some babies' stomachs are sensitive to cooler liquids, so Colic Calm® at room temperature could be unsettling. Colic Calm® may be added to a small amount (1 or 2 ounces) of warmed formula or pumped breast milk to raise temperature and change the taste and texture back to something familiar. Every baby is different, so a little trial and error is sometimes needed.

Can my baby take other medications while using Colic Calm®?

As with all medications, it is important to ensure that your doctor is aware of the use of this product. Always check with your doctor if your baby is taking other medications or has been treated for serious health concerns. If other medications are being used, allow a two-hour window between the other medication and Colic Calm®, so that the effects of the other medication are not lessened.

Does Colic Calm® have any side effects?

There are no known contraindications to any of the active ingredients in Colic Calm®. However, it is always advised that you check with your doctor before introducing any product.

The only harmless side effect you may notice is a temporary darkening of the stool. This occurs because Colic Calm® uses a form of carbon called Carbo Vegetabilis (Vegetable Charcoal). This pure, naturally-produced, non-carcinogenic vegetable charcoal makes Colic Calm® black in color. Vegetable charcoal does not enter the bloodstream, and passes out of the body naturally and easily, along with the gas and toxins it has collected on its journey through the digestive tract.

What is the best way to get out stains?

Colic Calm's rich dark color is as Mother Nature intended, without any "pretty" coloring to alter its purity and efficacy. While the microfine particles of vegetable charcoal do not contain any dye, they can get lodged in fabrics and may require gentle manipulation to loosen. That is why we have included a stain warning on bottle and box.

We find that stains lift out easily with most spray stain removers. It is best treat stains promptly. For stubborn stains, try pre-spotting with dishwashing liquid before washing. Many parents keep bibs and rags handy, so that stain removal doesn't become an issue.

Can Colic Calm® be used for anything other than colic?

Yes. Colic Calm® is extremely helpful in easing pain associated with the introduction of new foods, and the stomach upset that often accompanies teething. Many toddlers and older children benefit from stomach ache relief with Colic Calm®.

Colic Calm® can also provide relief for flatulence and bloating from gas. In addition, a great number of parents swear by Colic Calm® for effective treatment of hiccups.

How long should each bottle last?

Each bottle contains (48) ¼ teaspoon (1.25 mL) doses for babies under 20 lbs. or (24) ½ teaspoon (2.5 mL) doses for those over 20 lbs. Some children require more doses than others, depending on the frequency of their symptoms. We recommend discarding bottle six months after opening.

How do I store Colic Calm®?

This product should be stored at room temperature, out of direct sunlight. Because there is no need for refrigeration, Colic Calm® is also ideal for traveling away from home.

Why does my baby sleep soundly and longer after taking Colic Calm®?

Peaceful sleep often follows naturally after relief. There are no narcotic or habit-forming ingredients in Colic Calm®.

Learn More About Colic Calm®

Visit coliccalm.com or contact us directly:

Email customercare@coliccalm.com
Phone (877) 321-CALM

Try Our Other Products

Tummy Calm® - Effectively relieves gas, bloating & upset stomach in children of all ages.

Gastro Calm® - Quickly and naturally relieves adult heartburn, acid indigestion & sour stomach. Available soon at gastrocalm.com and stores near you.

Colic Calm®
Relief. Pure & Simple.

# Package/Label Principal Display Panel



Carton Label

Homeopathic Medicine

NDC 13992-001-01

Colic Calm®

The FIRST Homeopathic Gripe Water

- Great Tasting
- Pure & Natural
- Safe & Gentle
- Fast Acting

Even Helps Hiccups

For Symptomatic Relief of
Gas · Colic · Upset Stomach

24 - 48 Doses
Oral Suspension
2 fl. oz.

**COLIC CALM**

aloe socotrina, carbo vegetabilis, carum carvi, chamomilla, foeniculum vulgare, melissa officinalis, mentha piperita, prunus spinosa and zingiber officinale liquid

Product Information

| Product Type | HUMAN OTC DRUG LABEL | Item Code (Source) | NDC:13992-001 |
|---|---|---|---|
| Route of Administration | ORAL | DEA Schedule | |

Active Ingredient/Active Moiety

| Ingredient Name | Basis of Strength | Strength |
|---|---|---|
| **ALOE** (ALOE) | ALOE | 5 [hp_X]  in 59 mL |
| **ACTIVATED CHARCOAL** (ACTIVATED CHARCOAL) | ACTIVATED CHARCOAL | 1 [hp_X]  in 59 mL |
| **CARAWAY OIL** (CARAWAY OIL) | CARAWAY OIL | 5 [hp_X]  in 59 mL |
| **CHAMOMILE** (CHAMOMILE) | CHAMOMILE | 5 [hp_X]  in 59 mL |
| **FENNEL SEED** (FENNEL SEED) | FENNEL SEED | 5 [hp_X]  in 59 mL |
| **MELISSA OFFICINALIS** (MELISSA OFFICINALIS) | MELISSA OFFICINALIS | 5 [hp_X]  in 59 mL |
| **MENTHA PIPERITA** (MENTHA PIPERITA) | MENTHA PIPERITA | 5 [hp_X]  in 59 mL |
| **PRUNUS SPINOSA FLOWER BUD** (PRUNUS SPINOSA FLOWER BUD) | PRUNUS SPINOSA FLOWER BUD | 5 [hp_X]  in 59 mL |
| **GINGER** (GINGER) | GINGER | 5 [hp_X]  in 59 mL |

Inactive Ingredients

| Ingredient Name | Strength |
|---|---|
| **CITRIC ACID MONOHYDRATE** | |
| **GLYCERIN** | |
| **POTASSIUM BENZOATE** | |
| **POTASSIUM CITRATE** | |
| **WATER** | |
| **SORBIC ACID** | |
| **XYLITOL** | |

Packaging

| # | Item Code | Package Description | Marketing Start Date | Marketing End Date |
|---|-----------|--------------------|--------------------|-------------------|
| 1 | NDC:13992-001-01 | 1 in 1 CARTON | | |
| 1 | | 59 mL in 1 BOTTLE, WITH APPLICATOR | | |

Marketing Information

| Marketing Category | Application Number or Monograph Citation | Marketing Start Date | Marketing End Date |
|--------------------|------------------------------------------|--------------------|-------------------|
| Unapproved homeopathic | | 01/08/2007 | |

Labeler - TJL Enterprises Inc. (004042785)

Revised: 6/2013

# EXHIBIT B

**TUMMY CALM- tribasic calcium phosphate, activated charcoal, chamomile, citrullus
colocynthis fruit, lycopodium complanatum whole, moschus moschiferus whole, escherichia
coli, silicon dioxide and thuja occidentalis leaf liquid**
TJL Enterprises Inc.

Disclaimer: This homeopathic product has not been evaluated by the Food and Drug
Administration for safety or efficacy. FDA is not aware of scientific evidence to support
homeopathy as effective.

----------

# Tummy Calm®

# Active Ingredients

Calcarea Phosphorica......12X

Carbo Vegetabilis.............2X

Chamomilla....................12X

Colocynthis....................12X

Lycopodium....................12X

Moschus.........................12X

Natrum Muriaticum........12X

Silicea............................12X

Thuja.............................12X

# Purpose

Gas Relief, Teething, Bloating, Upset Stomach, Calming and Soothing, Hiccups, Burping

# Uses

Temporarily relieves the symptoms of:

- gas

- bloating
- upset stomach
- hiccups
- teething

# Warnings

- Do not use if outer seal imprinted with Tummy Calm logo on bottle or protective wrap on oral dispenser are broken or missing.
- Stop use and consult a doctor if symptoms last more than 7 days or inflammation, fever or infection occurs.
- As with all medications, it is important to ensure that your child's medical professional is aware of the use of this product.
- Because product is black, a temporary, harmless, darkening of the stool may occur.
- May stain fabric; protect clothing and furniture.

# Keep out of reach of children

# Directions

| Weight | Dose |
|---|---|
| Under 20 lbs. | 1/4 teaspoon (1.25 mL) |
| Over 20 lbs. | 1/2 teaspoon (2.5 mL) |

- Shake well before use to obtain uniform dark mixture.
- Remove outer seal imprinted with Tummy Calm logo from bottle and protective wrap on oral dispenser.
- When symptoms occur, fill enclosed oral dispenser up to indicated dose level and dispense liquid slowly into mouth, between cheek and gums, or mix into drink.
- If needed, repeat every 30 minutes for up to 3 doses, or as directed by physician. Do not exceed 6 full doses in 24 hours.
- Recap bottle and clean oral dispenser.

# Other Information

Please note: Sleep may follow naturally after relief.

Store at room temperature, out of direct sunlight.

# Inactive Ingredients

citric acid, glycerin, potassium benzoate, potassium citrate, purified water, sorbic acid, xylitol

# Questions or comments?

Call (877) 321-CALM

Visit us at
www.tummycalm.com

Or ask your physician, health care practitioner or pharmacist.

# Patient Information

Relief. Pure & Simple.

Thank you for choosing Tummy Calm® homeopathic medicine, the natural alternative to simethicone for the treatment of gas and so much more. As the makers of Colic Calm®, we have already delivered digestive relief to more than a half million babies. That's why our products are recommended by pediatricians, natural health care practitioners, and pharmacists.

Tummy Calm® is:

- FDA-regulated medicine
- Safe, gentle & effective
- Non-habit forming or addictive
- A smart alternative to conventional drugs

Frequently Asked Questions

What is the purpose of Tummy Calm® and is it safe for my child?

Tummy Calm® homeopathic medicine provides exceptional relief for discomfort from gas, bloating and upset stomach. Importantly, all homeopathic medicines must be manufactured using precise pharmaceutical methods and are regulated as over-the-counter medicines, unlike herbals and dietary supplements.

Tummy Calm® is a combination of nine homeopathic remedies, each of which has a long history of safe use. Tummy Calm's® formula is non-habit forming and does NOT contain sugar, sodium bicarbonate, simethicone, herbal oils, soy, dairy, wheat, gluten, yeast, animal products, artificial flavors or colors.

What makes Tummy Calm® different from simethicone gas drops?

Instead of relying on only one active ingredient, the many synergistic ingredients in Tummy Calm® work together to provide multi-symptom relief. Each dose gently stimulates the body's ability to heal itself, as opposed to merely suppressing symptoms.

How long will it take to work?

Most children experience relief within minutes of their first dose of Tummy Calm®. However, some may take longer before showing noticeable improvement. Sometimes it takes a few days until new positive relief associations can be made with Tummy Calm®.

We recommend giving Tummy Calm® at least one week to fully work its wonders. We encourage you to email us at customercare@tummycalm.com or please call us at (877) 321-CALM for helpful customized suggestions that can make a difference.

What are the directions for use?

At the first signs of digestive discomfort symptoms, shake bottle to obtain a uniform dark mixture.

For infants, we recommend starting with half the indicated dose in the weight chart, gradually increasing over the first few days until the full dose is reached. Fill enclosed oral dispenser and dispense liquid slowly into mouth, between cheek and gums. The dosage can also be mixed with 1 or 2 ounces of water, infant formula or other suitable liquids. Try not to give Tummy Calm® immediately after feeding if baby's stomach is full, as spit-up may occur from the added pressure.

For toddlers & up, Tummy Calm® may also be mixed with water, juice, cereal or other age-appropriate food/drink. Most children enjoy the sweet non-herbal taste, which blends especially well with juice. Dark juices and opaque sippy cups work well if Tummy Calm's dark color is an issue.

If needed, repeat every 30 minutes for up to 3 doses, or as directed by a physician. Do not exceed the equivalent of 6 full doses for the appropriate weight category per day. Carefully recap bottle, clean oral dispenser and let air-dry after each use.

Note: Tummy Calm® can be used to prevent or lessen digestive upset that may occur after feeding/meals. To treat excessive gas, many parents report excellent results by administering one quarter to one half the recommended dose before feedings when these usually result in symptoms.

What if my child spits up Tummy Calm®?

With infants, some spitting up is normal. One factor is temperature. Some babies' stomachs are sensitive to cooler liquids, so Tummy Calm® at room temperature could be unsettling. Tummy

Calm® may be added to a small amount (1 or 2 ounces) of warmed formula or pumped breast milk to raise temperature and change the taste and texture back to something familiar. Every baby is different, so a little trial and error is sometimes needed. For toddlers and up, Tummy Calm® naturally settles the stomach, so regurgitation is unlikely.

Can my child take other medications while using Tummy Calm®?

As with all medications, it is important to ensure that your doctor is aware of the use of this product. Always check with your doctor if your child is taking other medications or has been treated for serious health concerns. If other medications are being used, allow a two-hour window between the other medication and Tummy Calm®, so that the effects of the other medication are not lessened.

Does Tummy Calm® have any side effects?

There are no known contraindications to any of the active ingredients in Tummy Calm®. However, it is always advised that you check with your doctor before introducing any product.

The only harmless side effect you may notice is a temporary darkening of the stool. This occurs because Tummy Calm® uses a form of carbon called Carbo Vegetabilis (Vegetable Charcoal). This pure, naturally-produced, non-carcinogenic vegetable charcoal makes Tummy Calm® black in color. Vegetable charcoal does not enter the bloodstream, and passes out of the body naturally and easily, along with the gas and toxins it has collected on its journey through the digestive tract.

What is the best way to get out stains?

Tummy Calm's rich dark color is as Mother Nature intended, without any "pretty" coloring to alter its purity and efficacy. While the microfine particles of vegetable charcoal do not contain any dye, they can get lodged in fabrics and may require gentle manipulation to loosen. That is why we have included a stain warning on bottle and box.

We find that stains lift out easily with most spray stain removers. It is best treat stains promptly. For stubborn stains, try pre-spotting with dishwashing liquid before washing. Many parents keep bibs and rags handy, so that stain removal doesn't become an issue.

Note: A dispensing alternative is the NumiMed Dispenser, also developed by a mother "in need" and available at www.tummycalm.com. For infants, we recommend its purchase along with Tummy Calm®. It is often less messy when baby sucks the sweet, dark formula directly from the pacifier-like NumiMed. Additionally, the NumiMed can be used for any oral medications you are giving your baby.

Can Tummy Calm® be used for anything other than gas?

Yes. Tummy Calm® is extremely helpful in easing pain associated with the introduction of new foods, and the stomach upset that often accompanies teething. Toddlers and older children benefit from stomach ache relief. Tummy Calm® also provides relief for hiccups.

How long should each bottle last?

Each bottle contains (48) ¼ teaspoon (1.25 mL) doses for infants under 20 lbs. or (24) ½ teaspoon (2.5 mL) doses for those over 20 lbs. Some children require more doses than others, depending on the frequency of their symptoms. We recommend discarding bottle six months after opening.

How do I store Tummy Calm®?

This product should be stored at room temperature, out of direct sunlight. Because there is no need for refrigeration, Tummy Calm® is also ideal for traveling away from home.

Why does my child sleep soundly and longer after taking Tummy Calm®?

Peaceful sleep often follows naturally after relief. There are no narcotic or habit-forming ingredients in Tummy Calm®.

Learn More About Tummy Calm®

Visit tummycalm.com or contact us directly:

Email customercare@tummycalm.com
Phone (877) 321-CALM

Try Our Other Products

Colic Calm® - Effectively relieves colic, gas & upset stomach in newborns & babies.

Gastro Calm® - Quickly and naturally relieves adult heartburn, acid indigestion & sour stomach. Available soon at gastrocalm.com and stores near you.

Tummy Calm®
Pure Relief. Naturally.

# Package/Label Principal Display Panel



Carton Label

Homeopathic Medicine

NDC 13992-003-01

Tummy Calm®

Pure & Natural Gas Relief

- Safe & Gentle
- Fast Acting
- Great Tasting

Also Relieves:

- Bloating
- Upset Stomach
- Hiccups

For Infants & Children

The smart alternative to simethicone

24 - 48 Doses
Oral Suspension
2 fl. oz.

DISTRIBUTED BY

TJL Enterprises, Inc.

Long Beach, CA 90803

**TUMMY CALM**
calcarea phosphorica, carbo vegetabilis, chamomilla, colocynthis, lycopodium, moschus, natrum muriaticum, silicea, thuja liquid

Product Information

| Product Type | HUMAN OTC DRUG LABEL | Item Code (Source) | NDC:13992-003 |
|---|---|---|---|
| Route of Administration | ORAL | DEA Schedule | |

Active Ingredient/Active Moiety

| Ingredient Name | Basis of Strength | Strength |
|---|---|---|
| **TRIBASIC CALCIUM PHOSPHATE** (CALCIUM CATION) | CALCIUM CATION | 12 [hp_X]  in 59 mL |
| **ACTIVATED CHARCOAL** (ACTIVATED CHARCOAL) | ACTIVATED CHARCOAL | 2 [hp_X]  in 59 mL |
| **CHAMOMILE** (CHAMOMILE) | CHAMOMILE | 12 [hp_X]  in 59 mL |
| **CITRULLUS COLOCYNTHIS FRUIT** (CITRULLUS COLOCYNTHIS FRUIT) | CITRULLUS COLOCYNTHIS FRUIT | 12 [hp_X]  in 59 mL |
| **LYCOPODIUM COMPLANATUM WHOLE** (LYCOPODIUM COMPLANATUM WHOLE) | LYCOPODIUM COMPLANATUM WHOLE | 12 [hp_X]  in 59 mL |
| **MOSCHUS MOSCHIFERUS WHOLE** (MOSCHUS MOSCHIFERUS WHOLE) | MOSCHUS MOSCHIFERUS WHOLE | 12 [hp_X]  in 59 mL |
| **ESCHERICHIA COLI** (ESCHERICHIA COLI) | ESCHERICHIA COLI | 12 [hp_X]  in 59 mL |
| **SILICON DIOXIDE** (SILICON DIOXIDE) | SILICON DIOXIDE | 12 [hp_X]  in 59 mL |
| **THUJA OCCIDENTALIS LEAF** (THUJA OCCIDENTALIS LEAF) | THUJA OCCIDENTALIS LEAF | 12 [hp_X]  in 59 mL |

Inactive Ingredients

| Ingredient Name | Strength |
|---|---|
| **CITRIC ACID MONOHYDRATE** | |
| **GLYCERIN** | |
| **POTASSIUM BENZOATE** | |
| **POTASSIUM CITRATE** | |
| **WATER** | |
| **SORBIC ACID** | |
| **XYLITOL** | |

Packaging

| # | Item Code | Package Description | Marketing Start Date | Marketing End Date |
|---|---|---|---|---|
| 1 | NDC:13992-003-01 | 1 in 1 CARTON | | |
| 1 | | 59 mL in 1 BOTTLE, WITH APPLICATOR | | |

Marketing Information

| Marketing Category | Application Number or Monograph Citation | Marketing Start Date | Marketing End Date |
|---|---|---|---|
| Unapproved homeopathic | | 05/25/2012 | |

Labeler - TJL Enterprises Inc. (004042785)

Revised: 9/2013

# EXHIBIT C

# LEVI&KORSINSKY LLP

30 Broad Street, 24th Floor
New York, NY 10004
T: 212-363-7500 x127
F: 866-367-6510
www.zlk.com

Shane T. Rowley
srowley@zlk.com

November 6, 2014

**_Via Certified Mail - Return Receipt Requested_**

TJL Enterprises, Inc.
5353 E. 2nd Street, Suite 208
Long Beach, CA 90803

Jacqueline Courtiol-Lawrence
156 Granada Avenue
Long Beach, CA 90803

Re:   *Demand Letter Pursuant to California Civil Code § 1782 and Other Applicable Laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by TJL Enterprises, Inc. and Jacqueline Courtiol-Lawrence, pursuant to the provisions of California Civil Code § 1782, on behalf of our client, Wannita Thesier-Hendricks, and a class of all other persons similarly situated. This letter also serves as notice pursuant to the provisions of the Alabama Deceptive Trade Practices Act, and any other statutes or causes of action requiring pre-litigation notice.

You have participated in the marketing and sale of Colic Calm, Colic Calm Plus, and Tummy Calm (collectively, the "Homeopathic Products"). You represent on the Homeopathic Products' labels and/or in their nationwide advertising campaign that the Homeopathic Products effectively relieve infant and toddler gas problems, including gas, colic, bloating, upset stomach, and hiccups, and are fast acting. These representations are false and misleading. In fact, the Homeopathic Products contain only highly diluted concentrations of the so-called "active ingredients" and are nothing more than placebos.

Furthermore, with respect to the "all natural" claim on the Homeopathic Products' labels, each product contains commercially produced xylitol, which is not "all natural."

Our client purchased Colic Calm based on representations which state, among other things, that Colic Calm provides symptomatic relief for gas, colic, and upset stomach, is effective, "all natural," and fast acting. These and other similar statements regarding the Homeopathic Products are false and misleading and induce consumers like Ms. Theiser-Hendricks to purchase the Homeopathic Products. By making such false and misleading statements, you have violated numerous provisions of California law including the Consumer Legal Remedies Act, California Civil Code § 1770, including but not limited to subsections (a)(2), (5), (7), and (9).

Page 2 of 2
November 6, 2014

We hereby demand that you immediately (1) cease and desist from fraudulently marketing the Homeopathic Products; and (2) make full restitution to all purchasers of the Homeopathic Products of all purchase money obtained from sales thereof.

It is further demanded that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.  All documents regarding the advertisement and marketing of the Homeopathic Products;

2.  All documents concerning the sale of the Homeopathic Products, including the total amount of money generated from the sale of each product;

3.  All documents concerning any clinical studies or other research done regarding the safety and efficacy of the Homeopathic Products;

4.  All communications with customers and former customers concerning complaints related to the Homeopathic Products; and

5.  All documents concerning the identity of those individuals who purchased the Homeopathic Products.

We are willing to negotiate with you to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.

Moreover, in the event that the relief requested has not been provided within thirty (30) days from receipt of this letter, Plaintiff will amend her Complaint without leave of Court, as permitted by California Civil Code §1782, to include claims for actual and punitive damages (as may be appropriate).

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours
Levi & Korsinsky LLP

By:    _____

Shane T. Rowley