Matthew G. Ball (SBN 208881)
matthew.ball@klgates.com
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: 415 882 8200
Facsimile: 415 882 8220

Attorneys for Defendants
TJL ENTERPRISES, INC., and
JACQUELINE COURTIOL-LAWRENCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANNITA THESIER-HENDRICKS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TJL ENTERPRISES, INC., and JACQUELINE COURTIOL-LAWRENCE,<br><br>Defendants. | Case No.   2:15-cv-00477<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:         June 15, 2015<br>Time:        8:30 a.m.<br>Judge:       Hon. John A. Kronstadt<br>Courtroom: 750, 7th Floor |

2:15-cv-00477

**DEFENDANTS' REPLY MEMO. ISO MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I. Plaintiff Has Not Plausibly Pled That Colic Calm Is Ineffective ........................ 1

II. Plaintiff's Claim For Injunctive Relief Should Be Dismissed. ........................... 2

III. The Effectiveness Claims Are Noncognizable Lack Of Substantiation Claims That Should Be Dismissed. ...................................................................... 3

IV. Plaintiff Has Not Plausibly Alleged Reliance On The Synergistic Effect Claim, And All Causes Of Action Based On That Claim Should Be Dismissed. ............................................................................................................ 7

V. Plaintiff's Claims Based On The "FDA Safe And Effective Claim" Should Be Dismissed. ......................................................................................... 8

CONCLUSION ........................................................... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Target Corp.*,
   No. CV 13-5944-GHK (PJWx) (C.D. Cal. March 3, 2014) .................................. 2, 3

*Anderson v. The Hain Celestial Group, Inc.*,
   No. 5:14-cv-03895-EJD ........................................................................................ 3

*Asghari v. Volkswagen Group of America*,
   42 F. Supp. 3d 1306, 1333-1335 (C.D. Cal. 2013) ........................................ 8, 9, 10

*Bohn v. Pharmavite, LLC*,
   2012 WL 8898669 (C.D. Cal. May 16, 2012) (King, J.) ..................................... 3

*Bronson v. Johnson & Johnson, Inc.*,
   2013 WL 5731817 (N.D. Cal. Oct. 22, 2013) ........................................................ 5

*Dorfman v. Nutramex Labs., Inc.*,
   2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ..................................................... 1, 2

*Durell v. Sharp Healthcare, Inc.*,
   183 Cal. App. 4th 1350 (2010) ........................................................................ 8, 10

*Eckler v. Wal-Mart Stores, Inc.*,
   2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ......................................................... 3

*Forcellati v. Hyland's, Inc.*,
   No. CV-12-1983-GHK (MRWx) (C.D. Cal. Jan. 12, 2015) ............................... 5, 6

*Garcia v. Clarins USA, Inc.*,
   No. 14-CV-21249-- ............................................................................................. 5, 6

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006) ............................................................................... 3

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ................................................................. 1

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014) ..................................................................... 1

*Jovel v. Boiron Inc.*,
   No. 2:11-CV-1083-SVW-SH (C.D. Cal. August 16, 2013) ...................................... 2

*Keegan v. American Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................... 8

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) .................................................................................... 7, 10

*McNair v. Synapse Group, Inc.*,
   672 F.3d 213 (3rd Cir. 2012) ............................................................................ 1, 2

*Nat'l Council Against Health Fraud v. King Bio Pharm.*,
   107 Cal. App. 4th 1336 (2003) ......................................................................... 3, 4

*Ortega v. Natural Balance, Inc.*,
   2013 WL 65967692 (C.D. Cal. Dec. 16, 2013) .............................................. 4, 5, 6

*Pfizer, Inc. v. Superior Court*,
   182 Cal. App. 4th 622 (2010) ........................................................................ 8, 10

*Ries v. AriZona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ........................................................................ 2

*Rikos v. Proctor & Gamble Co.*,
   782 F. Supp. 2d 533 (S.D. Ohio 2011) ........................................................... 4, 5, 6

*Rosales v. FitFlop USA, LLC*,
   882 F. Supp. 2d 1168 (S.D. Cal. 2012) ................................................................ 6

*Rush v. Nutrex Research, Inc.*,
   2012 WL 2196144 (N.D. Cal. June 13, 2012) ..................................................... 4

*Toback v. GNC Holdings, Inc.*,
   No. 13-80526-CIV-COHN/Seltzer (S.D. Fla. Sept. 13, 2013) ............................... 6

*Weinstadt v. Dentsply Intern., Inc.*,
   180 Cal. App. 4th 1213 (2010) ............................................................................ 8

**Statutes**

15 U.S.C. § 2301(6)(A) ........................................................................................ 10

**Other Authorities**

21 CFR § 207.39 ................................................................................................ 10

## I. Plaintiff Has Not Plausibly Pled That Colic Calm Is Ineffective.

Three of the "Five Claims" Plaintiff allegedly relied upon in purchasing Colic Calm concern whether Colic Calm works to soothe a colicky baby. *E.g.,* Plaintiff's Opposition ("Opp'n") at 1:8-12. Defendants' Motion argued that the Claims were implausible, because no reasonable consumer would purchase Colic Calm over six months and dose a baby with it as much as 240 times unless it actually works. Motion at 7:6-8:17; *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 225 (3rd Cir. 2012) (a rational consumer would not do business with defendant again once learning of the defendant's deceptive conduct).

Plaintiff completely fails to explain why she would purchase and use an ineffective "fast-acting" medicine so many times over such a long period. Instead of proffering an explanation, she argues that her allegations of *reliance* are plausible. *See* Opp'n at 7:26-8:6 (citing *Dorfman v. Nutramex Labs., Inc.*, 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013), *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917 (N.D. Cal. 2014), and *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100 (N.D. Cal. 2013)).

These citations are unavailing, because the question Defendants' first argument presents is not the plausibility of Plaintiff's *reliance* allegations, but the plausibility of her *ineffectiveness* allegations, given her unexplained purchase history. *Dorfman*, *Hendricks*, and *Gustavson* are thus distinguishable because those cases address the plausibility of plaintiffs' reliance allegations. *Dorfman*, 2013 WL 5353043, at *15 (rejecting Defendant Wal-Mart's argument that plaintiff could not have relied on label representations in making purchase); *Hendricks*, 30 F. Supp. 2d at 931-32 (rejecting Star-Kist's assertion that plaintiff could not possibly have relied on the appearance of the can); *Gustavson*, 961 F. Supp. 2d at 1129 (rejecting the assertion that plaintiff could not plausibly rely on a label made misleading by alleged regulatory violations). These cases are also distinguishable because they do not involve repeated use of a product that would be proven ineffective upon first use. Colic Calm's label states that it is effective and fast-acting, and will soothe a colicky baby. Complaint ¶¶ 35-36. No

No 2:15-cv-00477

1

**DEFENDANTS' REPLY MEMO. ISO MOTION TO DISMISS**

consumer would repeatedly purchase and use Colic Calm repeatedly over six months unless it did just that. *McNair*, 672 F.3d at 225.

## II. Plaintiff's Claim For Injunctive Relief Should Be Dismissed.

Plaintiff's claim for injunctive relief founders on the standing requirement of Article III -- as even her own authority recognizes. *See Dorfman*, 2013 WL 5353043, at *9 (dismissing injunctive relief claim where the Complaint contains no allegations suggesting that plaintiff would purchase the product again).

This case is nothing like *Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012), where the court recognized the possibility that the plaintiffs could legitimately wonder whether they could rely in the future on an AriZona beverage's "all natural" label. *Id.* Here, as in *Jovel v. Boiron Inc.*, No. 2:11-CV-1083-SVW-SH (C.D. Cal. August 16, 2013), Plaintiff alleges that she would no longer buy any of Defendants' products (and presumably would never buy any homeopathic product at all), because homeopathy is bunk. Unless Plaintiff changes her views on homeopathy, she will always believe that homeopathy is bunk. Therefore, in no sense can Plaintiff suffer the kind of continuing injury that justified injunctive relief in *Ries* -- wondering if she can rely on Defendants' representations with any confidence. Her own allegations say she can't.

Nor is Ms. Thesier-Hendricks correct when she argues that a claim for injunctive relief may only be dismissed through a 12(f) motion to strike. *See* Opp'n at 13:7-13. Many federal trial court decisions -- including at least one opinion that Ms. Thesier-Hendricks relies on -- disagree. *Dorfman*, 2013 WL 5353043, at *9 (dismissing injunctive relief claim on 12(b)(6) motion); *see also Jovel, supra.*

Moreover, not even *Adams v. Target Corp.*, No. CV 13-5944-GHK (PJWx) (C.D. Cal. March 3, 2014), which Plaintiff cites, stands for the proposition that a 12(f) motion is necessary to dismiss a claim for injunctive relief. Rather, in *Adams*, the court held that injunctive relief was appropriate because "[p]laintiff has not alleged that the product was entirely worthless" and that "she very well might purchase [the

1  product] in the future . . . ." *Id.* at p. 5 of 7. *Adams* actually supports Defendants'
2  case, in that *Adams* also recognized that "a potential for future harm is lacking in false
3  advertising cases where the plaintiff asserts that the at-issue product does not work at
4  all[.]" *Id.*[1] This is precisely what Plaintiff alleges.

5  Finally, California's consumer protection laws cannot trump Article III's
6  standing requirement. Plaintiff does not deny that she must allege that she is
7  "realistically threatened by a repetition of the violation" in order to have standing to
8  sue for injunctive relief. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). As
9  discussed, Plaintiff cannot allege this threshold requirement. While it cannot be denied
10 that there is an "important state interest underlying California's consumer protection
11 statutes, it almost goes without saying that such an interest can never overcome a
12 constitutional standing requirement." *Anderson v. The Hain Celestial Group, Inc.*, No.
13 5:14-cv-03895-EJD, p. 8 of 14 (N.D. Cal. Apr. 8, 2015).

**III. The Effectiveness Claims Are Noncognizable Lack Of Substantiation Claims That Should Be Dismissed.**

16 The "Efficacy Claim", the "Fast Acting Claim" and the "Synergistic Effect
17 Claims" (the "Effectiveness Claims") are all noncognizable "lack of substantiation"
18 claims. To state a cognizable claim, Plaintiff must plead that "testing, scientific
19 literature, or anecdotal evidence" concerning the product at issue -- or at least the
20 ingredients contained in the product -- shows that Defendants' representations are
21 false. *Nat'l Council Against Health Fraud v. King Bio Pharm.*, 107 Cal. App. 4th
22 1336, 1347-48 (2003); *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218 (S.D. Cal.
23 Nov. 1, 2012). Far from being an opinion that is "roundly criticized," as Plaintiff's

---

[1] The *Adams* court did state that the court disfavors motions to dismiss "unless counsel has a good faith belief that such motions will likely result in dismissal, without leave to amend, or all or at least some of the claims under applicable law," *Adams*, No. 2:13-cv-05944-GHK (PJWx), at p. 5 of 7, but this seems to be a holding particular to Judge King, who authored the decision. *See also Bohn v. Pharmavite, LLC*, 2012 WL 8898669, at *4 (C.D. Cal. May 16, 2012) (same) (King, J.)

2:15-cv-00477

3

**DEFENDANTS' REPLY MEMO. ISO MOTION TO DISMISS**

claims (Opp'n at 17:18-20), *King Bio* is the seminal case in this area of law. In spite of this, Plaintiff has failed to plead any "testing, scientific literature, or anecdotal evidence" concerning Defendants' products, as *King Bio* requires. Instead, Plaintiff relies on generalized critiques of homeopathy, which are insufficient to state a cognizable claim.

Rather than support her case, Plaintiff's cited authority actually supports Defendants'. For example, *Rikos v. Proctor & Gamble Co.*, 782 F. Supp. 2d 533 (S.D. Ohio 2011), concerned capsules filled with a type of probiotic bacteria called "Bifantis." In *Rikos*, plaintiff was able to cite various studies -- including defendant's own study -- that tested Bifantis and found no proof to support defendant's claims. *Id.* at 526-527. Not surprisingly, the *Rikos* court allowed the claim to proceed. Here, there are no allegations that Defendants' products have been tested.

In *Ortega v. Natural Balance, Inc.*, 2013 WL 65967692 (C.D. Cal. Dec. 16, 2013), the court found some of the allegations to be "lack of substantiation" allegations and some to support a legitimate false advertising claim, although the court's analysis does not state why. However, an examination of the first amended complaint and plaintiffs' opposition brief shows that the *Ortega* plaintiffs did include among their allegations specific studies showing that specific ingredients did not in fact have the effects they were claimed to have. RJN at Exh. A (First Amended Complaint ¶¶s 77, 86-87 (referring to specific studies testing specific ingredients of the challenged product)) & Exh. B (Plaintiffs' Opposition Brief at 11:2-10 (arguing that specific studies show that claim was not one for "lack of substantiation")).[2] Here, there are no allegations that the ingredients of Defendants' products have been tested.

---

[2] Plaintiff cites *Rush v. Nutrex Research, Inc.*, 2012 WL 2196144 (N.D. Cal. June 13, 2012), but in *Rush*, the court apparently never analyzed defendant's "lack of substantiation" argument. The *Rush* Court instead seemed much more interested in the fact that the defendant's product was alleged to be unsafe because it contained a dangerous stimulant. *Id.* at *1, *7. This is not surprising, as the pleadings make clear that "lack of substantiation" played a very minor part in the dispute. *See generally* RJN Exh. C (Complaint) & D (Opposition to Motion to Dismiss).

2:15-cv-00477
4
**DEFENDANTS' REPLY MEMO. ISO MOTION TO DISMISS**

If Plaintiff is relying on *Rikos* and *Ortega* that the only difference between a cognizable and noncognizable case are the words used to plead it (*i.e.*, "the representation lacks substantiation" vs. "the representation is false"), that reliance is misplaced. Courts look to the complaint as a whole to determine if plaintiff has alleged a cognizable claim. *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 5731817, *4 (N.D. Cal. Oct. 22, 2013). The pleading involved in *Bronson* did not expressly allege that the product involved lacked scientific substantiation, but specifically pled that the product's claims misled consumers. *Bronson*, 2013 WL 5731817, at *4. The *Bronson* Court held that the claim was in effect a lack of substantiation claim, and dismissed it. *Id.*

Plaintiff further relies on *Forcellati v. Hyland's, Inc.*, No. CV-12-1983-GHK (MRWx) (C.D. Cal. Jan. 12, 2015), a case that is thoroughly distinguishable. In *Forcellati*, Judge King denied defendant's motion for summary judgment primarily because a study that *defendants themselves* commissioned showed that there was "no statistically significant difference between [the main product involved in the lawsuit] and a placebo." *Id.* at p. 6 of 10. Judge King held that when other expert evidence concerning homeopathy was considered *along with the study testing the main product involved in the lawsuit*, there was "undoubtedly a triable issue of fact as to whether Defendants have made misrepresentations" regarding the products. *Id.* at p. 7 of 10. Again, this case differs because there are no allegations that Defendants' products have been tested.

Also distinguishable is *Garcia v. Clarins USA, Inc.*, No. 14-CV-21249--HUCK/Otazo-Reyes (S.D. Fla. Sept. 4, 2014). The *Garcia* court considered various products, and ruled that plaintiff did not allege a "lack of substantiation" claim because plaintiff pled facts showing that either the promised benefits were impossible, or impossible to achieve with over-the-counter products. *Id.* at 15-16. Here, there is no allegation colic is impossible to treat, or requires prescription medication.

2:15-cv-00477

5

**DEFENDANTS' REPLY MEMO. ISO MOTION TO DISMISS**

Plaintiff's reliance on *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168 (S.D. Cal. 2012), also fails. In *Rosales*, a case that involved toning fitness shoes, the court refused to dismiss plaintiff's claim as noncognizable because "[p]laintiffs point[ed] to several studies involving toning fitness shoes that support their contention that these shoes have no beneficial effect on exercise intensity, improved muscle strength, or toning." *Id.* at 1176. Here, there are no such studies of products similar to Defendants'.

Finally, Plaintiff relies on *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV-COHN/Seltzer (S.D. Fla. Sept. 13, 2013), a case starkly different than this one. In *Toback*, the court found that plaintiff's claim was not for lack of substantiation because plaintiff "affirmatively allege[d] that studies have shown glucosamine and chondroitin, two ingredients of the . . . products, to be ineffective in promoting joint health. . . ." Again, there are no facts alleged regarding the testing of Defendants' ingredients.

Plaintiff has failed to point the Court to *any* cases supporting her claim that general critiques of homeopathy are sufficient to make her claim cognizable. Instead, Plaintiff's authority reinforces the point that courts require more than that: *e.g.*, tests of similar ingredients or similar products (*Toback*, *Rosales, Ortega*), testing of the product itself (*Forcellati*, *Rikos*), or evidence that the alleged benefit cannot be accomplished by *any* over-the-counter product (*Garcia*). There are no cases whatsoever that would allow Plaintiff's claim to proceed based on what she has alleged here: homeopathy in general does not work, so the challenged product must not work.

Indeed, the Complaint's various critiques of homeopathy cannot legitimately be applied to Defendants' products as a whole, because they are based on allegations that homeopathic medicines undergo such extreme dilutions that "homeopathic remedies do not contain any pharmacologically active molecules." Complaint ¶ 88; *see also id.* at ¶¶s 83-85, 89, 93. In contrast, Defendants' products contain so much vegetable charcoal that the labels warn against temporarily darkening of the stools and stained fabric. *Id.* at p. 54 of 74, 64 of 74.

Plaintiff has alleged no facts whatsoever to suggest that this substantial quantity of vegetable charcoal is ineffective to treat colic, or anything else. This is not an attempt to inject an issue of fact on a 12(b)(6) motion, as Plaintiff wrongly claims; Plaintiff's own authority shows that it is Plaintiff's burden to plead specific facts showing that Defendants' products do not work. Studies criticizing extremely diluted medications say nothing about Defendants' products, and are thus worthless.

### IV.   Plaintiff Has Not Plausibly Alleged Reliance On The Synergistic Effect Claim, And All Causes Of Action Based On That Claim Should Be Dismissed.

Plaintiff's claims should be dismissed to the extent they are based on the "Synergistic Effect Claim," because there are no plausible allegations that she relied on that Claim to purchase Colic Calm.

Ms. Thesier-Hendricks alleges that the only product she purchased is Colic Calm. Complaint ¶ 117. She further alleges that the Synergistic Effect Claim is found only on Colic Calm's package insert -- not on the exterior label. *Id.* at ¶ 42. Accordingly, she could not have relied on the Synergistic Effect Claim when she first purchased Colic Calm, because she could not have seen it before purchase.

Her allegation that she relied on the Synergistic Effect Claim (presumably to purchase subsequent bottles) -- which Claim, incidentally, her affidavit submitted with her Complaint fails to mention -- is not legally plausible, given her allegations that her grandson received no benefits from Colic Calm, and that she would not have purchased Colic Calm if she had known that it was not effective. *Id.* at ¶¶s 120-121. Because Plaintiff believed that Colic Calm would be "fast acting," (*id.* at ¶ 119) Plaintiff would have concluded that Colic Calm was ineffective well before finishing the first bottle and purchasing the second, and would not have relied on the package insert to purchase the second bottle, since by that time, she would have been aware that Colic Calm was ineffective, and would not have purchased it again. *Id.* at ¶ 121.

Plaintiff cannot allege UCL, CLRA, or FAL claims based on representations that she never relied upon. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327

2:15-cv-00477

7

**DEFENDANTS' REPLY MEMO. ISO MOTION TO DISMISS**

1  (2011); *Durell v. Sharp Healthcare, Inc.*, 183 Cal. App. 4th 1350, 1367 (2010); *Pfizer,*
2  *Inc. v. Superior Court*, 182 Cal. App. 4th 622, 630 (2010).  Those claims should be
3  dismissed.
4        Plaintiff cannot state a warranty claim based on the Synergistic Effect Claim for
5  the same reason.  Although Plaintiff claims that reliance is not a necessary element of a
6  breach of warranty claim, this is only true where the buyer and seller are in contractual
7  privity; where, as here, the buyer and seller are not in privity, Plaintiff must allege
8  reliance on the warranty.  *See Asghari v. Volkswagen Group of America*, 42 F. Supp.
9  3d 1306, 1333-1335 (C.D. Cal. 2013)  (citing cases and distinguishing *Weinstadt v.*
10  *Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213 (2010) as a case where there was privity
11  of contract between the buyer and seller).
12        Plaintiff further has not plausibly alleged that she was injured by any breach of
13  an alleged warranty, and it is difficult to see how she could allege that she was.  *See*
14  *Keegan v. American Honda Motor Co.*, 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012)
15  (injury caused by breach is element of express warranty claim in California).  By the
16  time she received the alleged warranty, she had already purchased the product, and
17  cannot plausibly allege reliance on the Synergistic Effect Claim for her subsequent
18  purchases for the reasons already explained.

19  **V.    Plaintiff's Claims Based On The "FDA Safe And Effective Claim" Should
20  Be Dismissed.**

21        All of Plaintiff's claims based on the "FDA Safe and Effective Claim" should be
22  dismissed.  First, it is necessary to correct a statement that Plaintiff makes in her
23  Opposition.  When discussing the "FDA Safety and Efficacy Claim" in her brief and
24  Complaint, Plaintiff describes Defendants' Colic Calm package insert this way:

25          The package insert for each Product tells consumers that it is an
26          'FDA-regulated medicine - Safe, gentle and effective.'

27  *E.g.*, Opp'n at 5:19-21; Complaint ¶ 42.
28        This presentation is misleading because it conveys the impression that the words
    "safe and effective" appear on the same line of text as "FDA-regulated medicine" on

1  the package insert -- a juxtaposition which Plaintiff asserts is designed to trick
2  consumers into thinking the FDA has pronounced Colic Calm and Defendants' other
3  products to be safe and effective, which the FDA has not done.  Opp'n at 21:8-18.
4      In fact, the package insert for the bottle of Colic Calm that Plaintiff purchased
5  reads, in relevant part, this way:
6      Colic Calm® is:
7  
8  - FDA-regulated medicine
- Safe, gentle, and effective

9  RJN Exh. E.  The representation that Colic Calm is "FDA-regulated medicine" is thus
10  listed in a completely separate bullet point from the representation that Colic Calm is
11  "Safe, gentle, and effective."  The separate bullet points convey that "FDA-regulated
12  medicine" is a separate representation from "Safe, gentle, and effective."
13      Despite Plaintiff's best efforts to confuse the issue, it is important to recognize
14  that the package insert version of the so-called "FDA Safety and Efficacy Claim" is the
15  *only* version that Plaintiff alleges she saw, and thus the *only* version that may be
16  considered when determining whether Plaintiff has stated a claim based on that Claim.
17  *See* Motion at 15:4-27; *see also Asghari*, 42 F. Supp. 3d at 1333-1335  (reliance is an
18  element of an express warranty claim). Accordingly, any other statements that any
19  Defendant may have made on this point are wholly irrelevant to Plaintiff's claims,
20  because she never relied on them.
21      Plaintiff cannot state a claim based on the "FDA Safety and Efficacy Claim" for
22  the same reason she cannot do so as to the Synergistic Effect Claim:  her allegations of
23  reliance are not plausible.  The "FDA Safety and Efficacy Claim" is found only on the
24  package insert.  Complaint ¶ 42.   As with the Synergistic Effect Claim, Plaintiff could
25  not have plausibly relied on the FDA Safety and Efficacy Claim to make her first
26  purchase, because she would not have seen it, and could not have relied on the FDA
27  Safety and Efficacy Claim to justify her subsequent purchases, because she would have
28  ceased purchasing Colic Calm after discovering that the first bottle was ineffective and

2:15-cv-00477

9

**DEFENDANTS' REPLY MEMO. ISO MOTION TO DISMISS**

not "fast-acting."  Without plausible allegations of reliance, Plaintiff cannot state a claim under the UCL, FAL, or the CLRA, or for breach of warranty.  *Kwikset Corp.*, 51 Cal. 4th at 327; *Durell v. Sharp Healthcare, Inc.*, 183 Cal. App. 4th at 1367; *Pfizer, Inc.*, 182 Cal. App. 4th at 630; *Allen*, 300 F.R.D. at 666 ; *Asghari*, 42 F. Supp. 3d at 1333-1335.

Plaintiff's citation to 21 CFR § 207.39 (Opp'n at 22:8-15) is baffling.  The regulation has no relevance to this case whatsoever.  In no way are Defendants conveying "an impression of official approval because of registration or possession of [a] registration or NDC number."  Rather, Defendants are simply making the wholly truthful statement that their products are FDA regulated -- a statement that Plaintiff is apparently unable to take issue with, since she failed to contest Defendants' Motion on this point, which was quite specific.  *See* Motion at 20:14-24.

Finally, the FDA Safety and Efficacy Claim is not actionable under the MMWA. The MMWA defines a written warranty as:  an affirmation of fact or promise "which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect-free or will meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301(6)(A).  The FDA Safety and Efficacy Claim plainly does not meet that definition.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's claims as set forth above.

Respectfully submitted,

K&L GATES LLP

Dated:  May 1, 2015

By:  */s/ Matthew G. Ball*
Matthew G. Ball

Attorneys for Defendants
TJL ENTERPRISES, INC., and
JACQUELINE COURTIOL-LAWRENCE

2:15-cv-00477